**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

-----------------------------------------------------------------x
:
ML FASHION, LLC and ML RETAIL, LLC,     :
        :  Case No. 3:21-cv-00499-JCH
      Plaintiffs,    :
        :
    v.     :  Hon. Janet C. Hall
        :
NOBELLE GW LLC, STEPHANIE MENKIN,    :
SARIT MAMAN NAGRANI, and NICOLAS    :
GOUREAU,        :
        :
      Defendants.    :
-----------------------------------------------------------------x


## PLAINTIFFS ML FASHION, LLC AND ML RETAIL, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR COSTS AND FOR A STAY OF PROCEEDINGS PENDING PLAINTIFFS' PAYMENT OF THOSE COSTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(D)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 3

    A.    Defendants Menkin and Goureau file duplicative actions in Delaware and New York ................................................................................................... 3

    B.    Defendants engage in delay and vexatious conduct in the NDIL Action .............. 5

    C.    Plaintiffs file the separate Cook County Action based on different facts and involving different parties ............................................................... 8

    D.    Plaintiffs file their lawsuit in this Court in order to expeditiously and efficiently address the merits of the parties' dispute ............................... 9

ARGUMENT ......................................................................................................... 11

I.     LEGAL STANDARD ...................................................................................... 11

II.    COSTS AND A STAY UNDER RULE 41(D) ARE NOT WARRANTED HERE ........ 14

    A.    As in *Spinner Consulting* and *United Rentals*, Plaintiffs' actions promoted judicial economy and were not motivated by any improper purpose ................... 14

    B.    The overall context of this dispute and Defendants' conduct further confirm that costs and a stay are not warranted here ........................................... 17

    C.    Defendants' arguments to the contrary are meritless ........................................... 19

        1.    Plaintiffs' jurisdictional arguments in the NDIL Action were amply supported ................................................................................................. 19

        2.    Defendants' speculation about Plaintiffs' motives for filing in this Court is baseless ................................................................................. 21

        3.    Defendants have already reused a significant portion of their work product from the NDIL Action ................................................. 23

        4.    Defendants' contention that there is a "first filed" action in which Plaintiffs should have brought these claims is meritless ........................ 24

    D.    No stay is warranted in this case .......................................................................... 25

CONCLUSION ...................................................................................................... 26

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. New York State Educ. Dep't*,
    630 F. Supp. 2d 333 (S.D.N.Y. 2009) ...................................................................11

*Andrews v. America's Living Ctrs., LLC*,
    827 F.3d 306 (4th Cir. 2016) ................................................................................11

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*,
    881 F.3d 520 (2018) ..............................................................................................20

*Bangl. Bank v. Rizal Commer. Banking Corp.*,
    2020 U.S. Dist. LEXIS 49246 (S.D.N.Y. Mar. 20, 2020) ....................................21

*Bank of N.Y. Mellon v. Bell*,
    2013 U.S. Dist. LEXIS 134012, 2013 WL 5308274 (D. Conn. Sept. 19, 2013) ....13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..............................................................................................20

*Esposito v. Piatrowski*,
    223 F.3d 497 (7th Cir. 2000) ................................................................................17

*Great Lakes Overseas v. Wah Kwong Shipping Group*,
    990 F.2d 990 (7th Cir. 1993) ................................................................................15

*Horowitz v. 148 South Emerson Assocs. LLC*,
    888 F.3d 13 (2d Cir. 2018) ...................................................................................11

*Iberia Foods Corp. v. Latinfoods U.S. Corp.*,
    2021 U.S. Dist. LEXIS 79153 (E.D.N.Y. Apr. 26, 2021) ................................11, 25

*Keller Transp., Inc. v. Wagner Enters.*,
    873 F. Supp. 2d 1342 (D. Mont. 2012) .................................................................21

*Kinzy v. Howard and Howard, PLLC*,
    2017 U.S. Dist. LEXIS 6262 (N.D. Ill. Jan. 17, 2017) .................................... 15-16

*Kromrey v. United States DOJ*,
    423 F. App'x 624 (7th Cir. 2011) .........................................................................15

*Loubier v. Modern Acoustics, Inc.*,
    178 F.R.D. 17 (D. Conn. 1998) .............................................................................11

ii

*MG Design Assocs. v. Costar Realty Info., Inc.*,
    224 F. Supp. 3d 621 (N.D. Ill. 2016) .....................................................................20

*Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    2006 U.S. Dist. LEXIS 50952 (D. Conn. July 26, 2006)...................................11, 13

*Preferred Freezer Servs., LLC v. Americold Realty Trust*,
    2020 U.S. Dist. LEXIS 27495 (S.D.N.Y. Feb. 18, 2020) .......................................26

*Ramirez v. iBasis, Inc.*,
    2010 U.S. Dist. LEXIS 27690 (E.D.N.Y. Mar. 24, 2010) .................................11, 13

*Ruhrgas Ag v. Marathon Oil. Co.*,
    526 U.S. 574 (1999)................................................................................................15

*Spinner Consulting LLC v. Stone Point Capital LLC*,
    2020 U.S. Dist. LEXIS 181943 (D. Conn. Sept. 30, 2020) .........................2, 12, 13, 14, 15, 16

*Toy Biz v. Centuri Corp.*,
    990 F. Supp. 328 (S.D.N.Y. Jan. 13, 1998) ...........................................................21

*United Rentals (N.Am.), Inc. v. Nardi*,
    2002 U.S. Dist. LEXIS 26781 (D. Conn. Sept. 23, 2002) ....................................14, 16, 17, 23

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................................8, 20

## Other Authorities

Fed. R. Civ. P. 13...........................................................................................................25

Fed. R. Civ. P. 41.................................................................................................. *passim*

Plaintiffs ML Fashion, LLC ("ML Fashion") and ML Retail, LLC ("ML Retail") (collectively, "Plaintiffs") submit this opposition to the Motion for Costs and for a Stay of Proceedings Pending Plaintiffs' Payment of Those Costs Pursuant to Federal Rule of Civil Procedure 41(d) (the "Motion" or "Mot.") (Dkt. No. 31), brought by Defendants Nobelle GW LLC ("Nobelle"), Stephanie Menkin ("Menkin"), Sarit Maman Nagrani ("Nagrani"), and Nicolas Goureau ("Goureau") (collectively, "Defendants").

## INTRODUCTION

Defendants' Motion should be denied. An award of costs and a stay are not warranted because Plaintiffs withdrew their action in the United States District Court for the Northern District of Illinois (the "NDIL Action") due to meritless jurisdictional delays and filed in this Court in order to get to the merits as efficiently as possible, not for any improper purpose. Defendants' Motion also omits critical context that provides additional support for denying the Motion.

In particular, Defendants' Motion and supporting analysis rely upon material factual omissions regarding: Menkin's and Goureau's lawsuits in Delaware and New York, their overall litigation strategy, and the separate cases in the NDIL Action and Cook County (the "Cook County Action"). Notably, Defendants failed to advise this Court that their baseless motion for sanctions in the NDIL Action seeks recovery of the *very same costs and attorneys' fees they are now seeking from this Court*. Defendants could have sought costs and fees under Rule 41(d) as part of their motion in the NDIL Action, yet chose not to do so. By keeping these facts from this Court, Defendants apparently hope that they can either circumvent an eventual denial by the Illinois court by getting a second bite at the apple in this Court, or attempt to obtain a double recovery consistent with Defendants' improper tactics of claim splitting, for which Defendants have already been admonished in Delaware and their case stayed. Defendants' improper decision to burden two courts and the parties with simultaneous applications for the same fees and costs is unfortunately

consistent with their overall scorched-earth strategy in their baseless campaign against Marcus Lemonis ("Lemonis").

For example, the Delaware Chancery Court held that Defendants Menkin and Goureau *violated the prohibition against claim splitting by filing simultaneous, duplicative lawsuits in Delaware and New York*, and the Chancery Court also *sanctioned* Menkin and Goureau for discovery misconduct. Defendants further needlessly multiplied the proceedings in various forums by filing numerous motions and then filing unauthorized "supplemental" filings, without leave of court, after the motions had been fully briefed. Menkin and Goureau also obtained litigation funding of at least $1.5 million for their campaign against Lemonis, so they are not paying the costs of these bad-faith tactics. Instead, their goal seems to be to delay and drive up Plaintiffs' own legal fees as much as possible.

This Motion is part of that larger pattern of delay, obfuscation, and unnecessary burden. As Defendants concede, Plaintiffs withdrew the NDIL Action and re-filed in this Court because of Defendants' jurisdictional arguments, which, contrary to Defendants' assertions, were baseless. Because the Illinois court would not have addressed the merits without first resolving the jurisdictional issue, however, and would have dismissed the NDIL Action without prejudice to re-filing in this Court even if it had agreed with Defendants, Plaintiffs withdrew the NDIL Action in order to have the merits adjudicated as quickly and efficiently as possible. Just last Fall, under similar circumstances, another court in this District held that costs and a stay were not warranted under Rule 41(d), and the same is true here. *See Spinner Consulting LLC v. Stone Point Capital LLC*, 2020 U.S. Dist. LEXIS 181943 (D. Conn. Sept. 30, 2020).

Ultimately, Defendants have no defense to the merits of Plaintiffs' claims given the undisputed facts that they are operating a competing clothing retail store in Connecticut, utilizing

a space that formerly housed one of Plaintiffs' stores, and are selling products similar or in many cases identical to those sold by Plaintiffs, including exclusive brands owned by Plaintiffs. All Defendants can do is try to delay for as long as possible in hopes of Plaintiffs abandoning their claims, driving up Plaintiffs' legal fees and costs in the process. An award of fees and costs against Plaintiffs here are not warranted under the law and would reward Defendants for their repeated tactics of delay and vexatious multiplication of litigation. The Court should reject these tactics and deny the Motion.

## BACKGROUND

### A. Defendants Menkin and Goureau file duplicative actions in Delaware and New York.

On June 18, 2020, Defendants Menkin and Goureau filed simultaneous, duplicative lawsuits in Delaware and New York (the "Delaware Action" and the "New York Action"). Complaint, Dkt. No. 1 ("Compl."), ¶ 96. Notably, Defendants Nobelle and Nagrani are not parties to the Delaware Action or the New York Action, and so no claims can be asserted against them in those actions. Mot. Exs. 2, 3. Similarly, Plaintiff ML Fashion is not a party to the New York Action, and so it could not assert any of its claims brought here in that action. Mot. Ex. 3.

In the Delaware Action, Menkin and Goureau asserted claims against ML Retail, ML Fashion (as "Nominal Defendant"), and others, based upon Lemonis' alleged mismanagement of, and alleged misconduct relating to, ML Fashion. *See* Mot. Ex. 2. Menkin and Goureau subsequently sought sanctions against Lemonis and ML Retail in that case, claiming that the filing of the Cook County Action (described below) violated a *status quo* order entered by the Chancery Court in the Delaware Action. The Chancery Court rejected Menkin's and Goureau's request, holding that the claims asserted in the Cook County Action were not at issue in the Delaware Action, and that Menkin and Goureau were improperly trying to wield the *status quo* order as an

"anti-suit injunction." Declaration of Michael D. Wexler, dated June 1, 2021 ("Wexler Decl."), Ex. A 24:20-30:11. During that same hearing, the Chancery Court **sanctioned Menkin and Goureau** in an on-the-record order for their improper discovery tactics. *Id.* 6:1-5.

Subsequently, on March 30, 2021, the Delaware Chancery Court **stayed that case** and vacated the *status quo* order entered in the action. *See* Wexler Decl. Ex. B. Specifically, the Delaware court held that Menkin and Goureau "*violate[d] the rule against claim splitting.*" Wexler Decl. Ex. B 5 (emphasis added).

Contrary to Defendants' assertions (Mot. 6 n.6), the Chancery Court did **not** hold that Menkin and Goureau had no choice but to file simultaneous, duplicative lawsuits. The Chancery Court did hold that it "has the unique ability to dissolve Delaware entities." Wexler Decl. Ex. B 32. But the Chancery Court then stated that this "unique ability" did not justify "subjecting [Plaintiffs in this Connecticut case] to duplicitous [sic] litigation and inconsistent findings." *Id.* 33. "To remedy this violation," the Chancery Court stayed the Delaware action "pending resolution of the" New York Action. *Id.* 5, 33. Defendants' actions forced Plaintiffs to incur significant, and ultimately unnecessary, legal fees on an action that should never should have been filed.

In the New York Action, Menkin and Goureau asserted claims against ML Retail, Lemonis, and others, asserting claims strikingly similar to those asserted in Delaware relating to ML Fashion's predecessor-in-interest, Gooberry Corp. Mot. Ex. 3. The New York Action is subject to fully-briefed motions to dismiss. Wexler Decl. ¶ 4. In addition to arguing that Menkin and Goureau violated the rule against claim splitting, the defendants in the New York Action contend that Menkin and Goureau filed in an improper venue, as they were required to bring their claims in Illinois; failed to state any of their claims; and also signed releases barring certain of their claims.

*Id.* ML Retail and other defendants also filed a request for leave to file a motion to transfer venue to the Northern District of Illinois, which remains pending. *Id.* ML Retail expects that the New York Action will be dismissed in its entirety or transferred to Illinois as a result.

Subsequent to the completion of briefing on the motions to dismiss in the New York Action, Defendants Menkin and Goureau continued to burden the court and the parties in that Action by making multiple "supplemental" filings, without prior leave of the New York court. Wexler Decl. ¶ 5.

Defendants Menkin's and Goureau's willingness to engage in duplicative and vexatious litigation, and their insistence on driving up Plaintiffs' legal costs in multiple jurisdictions, appear to be motivated at least in part by the fact that they obtained at least $1.5 million in litigation funding in connection with the Delaware and New York Actions. Wexler Decl. Ex. C. Accordingly, Menkin and Goureau do not have to pay their own legal fees in the Delaware and New York Actions and, because money is fungible, are effectively able to avoid paying legal fees in the other actions as well.

**B.     Defendants engage in delay and vexatious conduct in the NDIL Action.**

After Menkin and Goureau filed their duplicative lawsuits in Delaware and New York, Menkin and Nagrani began to operate a competing business, Nobelle, in or about August 2020. Compl. ¶ 101. On August 31, 2020, Plaintiffs commenced the NDIL Action to, among other things, stop Defendants' unlawful competition against ML Fashion and obtain the return of stolen inventory, stolen fixtures, furniture and equipment ("FFE"), and stolen computers. *Id.* ¶ 183. Although Defendants complain about the number of docket entries in the NDIL Action (Mot. 3, 18 and Ex. 6 thereto), of the 83 docket entries in that action, fewer than half came from Plaintiffs: 31 were filings by Defendants and 18 were entries from the Court or Clerk of Court. *See* Mot. Ex. 6.

Among their voluminous filings in the NDIL Action, Defendants moved to dismiss the NDIL Action, and affirmatively asserted that Nobelle is "at home" in Connecticut. *See, e.g.*, Compl. ¶¶ 198, 207; Wexler Decl. Ex. D 3, 27 (Defendants' motion to dismiss). In addition to moving to dismiss the NDIL Action, Defendants also filed an unnecessary motion to stay the NDIL Action pending the outcome of the Delaware Action, *i.e.*, **Defendants asked the court in the NDIL Action to stay that action in favor of an action that the Delaware Chancery Court later held had been improperly filed by Defendants**. *See* Mot. Ex. 6 Dkt. No. 46.

On January 19, 2021, the Illinois court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction based on Plaintiffs' original (rather than amended) complaint, and without the benefit of the additional allegations and subsequent evidentiary showing submitted by Plaintiffs in response to inquiries from the Illinois court. *See* Mot. Ex. 1 at 5 n.3. As part of its decision on a preliminary record, the court held, much like the Delaware Chancery Court, that Plaintiffs' allegations regarding Menkin's and Goureau's misappropriation of funds from ML Fashion "don't play much of a role in the request" for relief, which the court stated "doesn't have much to do with the alleged misappropriation of funds." *Id.* 4. Rather than further amend their complaint to pursue relief in the NDIL Action relating to that misappropriation, Plaintiffs opted to focus that action on Defendants' improper competition and theft of inventory, FFE, and computers, leaving the issue of misappropriation of funds to the separate Cook County Action. Mot. Ex. 8.

On the same day the court in the NDIL Action denied Plaintiffs' motion, the court posed a series of questions about the underlying facts of this action **to both sides**. Mot. Ex. 6 Dkt. No. 55.

On February 3, 2021, Plaintiffs filed detailed submissions in response to the Court's inquiries and in response to Defendants' motion to dismiss. *See* Compl. Exs. 8, 9, 10. These

submissions included sworn declarations, complete with photographs and exhibits, and a detailed factual recitation of the bases for Plaintiffs' claims in this action. *Id.*

Among other things, Plaintiffs made a detailed showing of Defendants' contacts with Illinois in response to Defendants' arguments regarding personal jurisdiction, including Defendants' knowing theft of inventory that originated from, and would have been sold in, Illinois but for Defendants' misconduct; their knowing breaches of contractual and fiduciary duties owed to ML Fashion in Illinois; and their knowingly making fraudulent misrepresentations to Plaintiffs' manager in Illinois. Wexler Decl. Ex. E 8-12 (opposition to motion to dismiss). With respect to Defendants' motion to dismiss for failure to state a claim, Plaintiffs made a robust showing about, among other things, Defendants improper sale of ML Fashion's inventory, including exclusive private-label brands, as well as Defendants' selling similar or even identical products at their retail store in Connecticut and to consumers nationwide, creating actual confusion about whether Defendants' competing operation was affiliated with or authorized by Plaintiffs. *Id.* 13-16, 21-29. Defendants also demonstrated that Defendants stole trade secrets and computers with confidential information in order to boost their competing business. *Id.* 16-21.

As detailed in the Complaint, Defendants did not dispute, and affirmatively admitted, most of the key facts in the NDIL Action. In particular, Defendants admitted that they retained Plaintiffs' inventory, FFE, and computers, and that they are actively operating a retail store at a location leased by ML Fashion and online. Compl. ¶¶ 187-206. Defendants also repeatedly refused to return ML Fashion's property, and they continue to improperly hold and use ML Fashion's property to this day. *See id.* ¶ 181.

Despite Defendants' admissions, because Supreme Court and Seventh Circuit precedent required the court in the NDIL Action to resolve personal jurisdiction questions before reaching

the merits, Plaintiffs realized that they would be unable to obtain relief for the continuing harms they were suffering while those jurisdictional questions remained outstanding. Wexler Decl. ¶ 12. Plaintiffs therefore determined that, although they vigorously disputed Defendants' contentions regarding personal jurisdiction in the NDIL Action, they would assert their claims in a court that undisputedly can exercise personal jurisdiction so that the merits can be addressed immediately. *Id.* ¶ 13. Plaintiffs accordingly opted to withdraw the NDIL Action on March 26, 2021, which the Illinois court approved on May 27, 2021. Compl. ¶ 206.

On April 12, 2021, after the case had been voluntarily dismissed, Defendants made a motion in the NDIL Action for sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent authority. Mot. Ex. 6 Dkt. No. 72. Defendants erroneously contended, as they do here, that Plaintiffs could not have possibly had a good-faith belief that the Illinois court could exercise personal jurisdiction over Defendants in light of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014). *See* Wexler Decl. Ex. F 7-10 (opposition to motion for sanctions). Defendants also gratuitously attached to that motion a hearsay news article about Lemonis and referenced lawsuits involving ML Retail and various non-parties, all of which were unrelated to their request for sanctions and apparently aimed only at further disparaging Lemonis. *Id.* 6.

Plaintiffs opposed the motion for sanctions. Wexler Decl. Ex. F. Once that motion was fully briefed, Defendants continued to make unauthorized, "supplemental" filings about the outcome in the Cook County Action, which, as described below, had no relation to the NDIL Action. Mot. Ex. 6 Dkt. Nos. 81, 83.

### C. Plaintiffs file the separate Cook County Action based on different facts and involving different parties.

Menkin's and Goureau's misconduct is multi-faceted, and includes their misappropriation and theft, along with their mother Noemi Goureau ("Noemi"), of ML Fashion funds. Based on

that separate conduct—which, as set forth above, the courts in Illinois and Delaware both held were not part of the NDIL Action or the Delaware Action, respectively—Plaintiffs brought the Cook County Action against Menkin, Goureau, and Noemi, who is not a party to this action in Connecticut. Mot. Ex. 8. The Cook County Action necessarily involved different facts and different contacts with Illinois than those described above in the NDIL Action. *See id.*

On April 30, 2021, the court in the Cook County Action dismissed the action on personal jurisdiction grounds, but did not reach the merits of Plaintiffs' claims. Mot. Ex. 9. The Cook County court did not hold that Plaintiffs' Nobelle-related allegations would have been insufficient for the exercise of personal jurisdiction in Illinois, and had no occasion to address that issue, since those facts were not before the Cook County court. *See id.* On May 28, 2021, Plaintiffs moved for reconsideration of the Cook County court's decision, and the motion remains pending. Wexler Decl. Ex. G.

**D.    Plaintiffs file their lawsuit in this Court in order to expeditiously and efficiently address the merits of the parties' dispute.**

Following the voluntary dismissal of the NDIL Action, Plaintiffs promptly filed a new action focused solely on the Nobelle-related claims in the judicial district where Defendants are operating Nobelle, *i.e.*, in this District. Dkt. No. 1. All Defendants have appeared in this action, and the Court directed that their responses to the Complaint were due on May 17, 2021. Dkt. No. 28.

On May 17, 2021, Defendants filed a motion to dismiss for failure to state a claim and, with respect to Nicolas Goureau only, lack of personal jurisdiction and improper venue. Dkt. No. 33. That motion reused much of the work product Defendants created in connection with the NDIL Action. Among other things, Defendants' motion to dismiss cites to more than twenty of the cases cited in Defendants' motion to dismiss in the NDIL Action. *Compare* Wexler Decl. Ex. D ii-xi

*with* Dkt. No. 33-1 i-vii. The motion to dismiss is also nearly word-for-word identical in some places to Defendants' motion to dismiss in the NDIL Action.

For example, in their introduction, Defendants copied and pasted the portion of their preliminary statement in the NDIL Action regarding failure to state a claim, and simply added the word "still" into the Connecticut version, *e.g.*, "Plaintiffs' Lanham Act claims still lack any cognizable basis . . . ." *Compare* Dkt. No. 33-1 1-2 *with* Wexler Decl. Ex. D 1. The first few pages of the "Background" section are similarly almost word-for-word identical to Defendants' "Background" section in their motion to dismiss the NDIL Action. *Compare* Dkt. No. 33-1 2-4 *with* Wexler Decl. Ex. D 2-3.

Although the case citations sometimes differ, the arguments themselves are also often word-for-word identical to Defendants' arguments in the NDIL Action, even down the section headings. As just one example, in arguing that Plaintiffs failed to plead false advertising, Defendants stated "[t]he claim fails on (at least) the first two elements because there is no allegation of any designation of origin, false or otherwise—in fact, Plaintiffs lack any false statement at all. Indeed, the advertising and social media posts that Plaintiffs attach (Exs. 3-6) show that Defendants sell third-party fashion labels they are neither branded 'Nobelle' nor show any affiliation with the Plaintiffs: they are third-party designers such as Autumn Cashmere or others. As such, the only designation of origin here is the designer that made the goods, and there is nothing false or misleading about such a designation." Dkt. No. 33-1 8-9 (footnote omitted). Other than the exhibit number references, the text is identical to Defendants' argument in the NDIL Action. *See* Wexler Decl. Ex. D 15. The passages even include an identical footnote, footnote 6 in Connecticut and footnote 21 in the NDIL Action. *See id.* There are many of these identical passages throughout the two motions to dismiss.

## ARGUMENT

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) **may** order the plaintiff to pay all or part of the costs of that previous action; and (2) **may** stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d) (emphasis added). Because the Rule uses "may," the Court has discretion in deciding whether to award costs and/or stay the proceedings until those costs are paid. *Adams v. New York State Educ. Dep't*, 630 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) ("Awarding costs and attorneys' fees under Rule 41(d) is 'completely discretionary'").

Although "[t]here is no requirement in Rule 41(d) or the relevant caselaw that a defendant must show bad faith on the part of the plaintiff in order to recover costs," courts "may take into consideration plaintiffs' motive in dismissing the prior action." *Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22 (D. Conn. 1998) (cited in Mot. 11, 12, 19). This is because the purpose of Rule 41(d) is "'to serve as a deterrent to forum shopping and vexatious litigation.'" *Horowitz v. 148 South Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir. 2018) (cited in Mot. 10) (quoting *Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 309 (4th Cir. 2016)).

Accordingly, costs and a stay under Rule 41(d) are generally appropriate only where awarding costs and a stay would serve Rule 41(d)'s purpose of deterrence. *See, e.g., Ramirez v. iBasis, Inc.*, 2010 U.S. Dist. LEXIS 27690, at *10 (E.D.N.Y. Mar. 24, 2010) ("a district court may refuse to impose [Rule 41(d) costs] on the plaintiff if it appears that there was a good reason for the dismissal of the prior action"); *Adams*, 630 F. Supp. 2d at 344 (same); *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 U.S. Dist. LEXIS 50952, at *20 (D. Conn. July 26, 2006) (denying costs under Rule 41(d) where plaintiff's "motives [for voluntary dismissal] are more

innocuous"); *Iberia Foods Corp. v. Latinfoods U.S. Corp.*, 2021 U.S. Dist. LEXIS 79153, at \*12 (E.D.N.Y. Apr. 26, 2021) ("The court appreciates Defendants' frustration with having to litigate in two separate forums. In instances, not applicable here, where it is shown that a plaintiff dismissed one case in order to forum shop, seek an advantage, or drive up the cost of litigation, the court would be inclined to grant fees to the defendant. However, there is no evidence of that in this case.").

A decision from another court in this District from last Fall illustrates this analysis. *Spinner Consulting LLC v. Stone Point Capital LLC*, 2020 U.S. Dist. LEXIS 181943 (D. Conn. Sept. 30, 2020) (Wexler Decl. Ex. H). In that case, the "[p]laintiff previously filed two related lawsuits alleging antitrust conspiracy in the District of New Jersey." *Id.* at \*2. The first New Jersey action was against an entity called BMS and then, while a motion to dismiss was pending that first action, plaintiff filed a second action in New Jersey against Stone Point Capital LLC ("Stone Point)," "which had acquired a controlling interest in BMS." *Id.* Stone Point filed a motion to dismiss in the second New Jersey action, "asserting, *inter alia*, that the District of New Jersey lacked personal jurisdiction over" Stone Point. *Id.* The plaintiff then "voluntarily dismissed the Second New Jersey Action, and the next day, Plaintiff filed the same claim against Stone Point in the District of Connecticut." *Id.* at \*2-3.

In arguing that costs and a stay were appropriate under Rule 41(d), Stone Point asserted that it had "to incur significant costs," which "could have been avoided had Plaintiff not filed and then dismissed the [Second] New Jersey Action." *Id.* at \*3-4 (internal quotation marks omitted) (brackets in original). Stone Point further argued that "Plaintiff wanted to be assigned to a more favorable judge in a more favorable forum, with the result that Defendant has had to shoulder these avoidable costs that Rule 41(d) was designed to prevent." *Id.* at \*4.

The plaintiff opposed the motion, and argued that "its initial decision to file the Second New Jersey Action in the District of New Jersey promoted judicial economy given that the related First New Jersey Action was already being litigated there" and, importantly, "its decision to refile the action in the District of Connecticut also promoted judicial economy because it **enabled the parties to avoid the costs and delay of litigating personal jurisdiction** when there was no longer a good reason to keep the case in the District of New Jersey after the First New Jersey Action was dismissed." *Id.* at *4-5 (emphasis added) (citing *Bank of N.Y. Mellon v. Bell*, 2013 U.S. Dist. LEXIS 134012 (D. Conn. Sept. 19, 2013); *Ramirez*, 2010 U.S. Dist. LEXIS 27690; and *Phillips*, 2006 U.S. Dist. LEXIS 50952).

The court agreed with the plaintiff and rejected Stone Point's arguments. The court explained that plaintiff "had a sound basis for filing the Second New Jersey Action in the District of New Jersey—the cases were related, and thus putting them before the same judge promoted judicial economy." *Id.* at *5. The court explained that this basis "was not applicable" when the first New Jersey action was dismissed, however." *Id.* The court then held that:

> Therefore, when Defendant Stone Point raised a personal jurisdiction defense in its motion to dismiss the Second New Jersey Action, Plaintiff was faced with a choice: it could either voluntarily dismiss the lawsuit and *refile it where personal jurisdiction could not be challenged, conserving the parties' and the court's resources*, or it could defend against the personal jurisdiction argument. If Plaintiff prevailed, the case would remain in the District of New Jersey, a forum that no longer presented the earlier judicial economy. *If Plaintiff lost, it could bring a new action in a forum where personal jurisdiction could not be challenged.* By voluntarily dismissing the Second New Jersey Action and refiling it in this Court, *Plaintiff enabled the parties to direct their resources to litigating the merits of the case.*
>
> *Since Plaintiff was free to refile its claim in this district if it received a non-merits dismissal for lack of personal jurisdiction, avoiding the delay and cost of litigating that issue in its Second New Jersey Action resulted in some judicial economy.*

*Id.* at *6 (emphasis added).

The decision in *Spinner Consulting* is consistent with other decisions within this District. For example, in *United Rentals (N. Am.), Inc. v. Nardi*, 2002 U.S. Dist. LEXIS 26781 (D. Conn. Sept. 23, 2002) (Wexler Decl. Ex. I), the court declined to award costs under Rule 41(d) where "the New Action includes the same claims against the same defendants," and "[t]here is thus no indication that the expenditure of costs by defendants before this Court will not defray litigation expenditures in the Florida action." *Id.* at *4-5. The court further held that "[t]here is further no indication that the complaint before this Court contained groundless claims . . . or that the Florida action is evidence of a vexatious intent or forum shopping." *Id.* at *5. Rather, "the voluntary dismissal reflects plaintiffs' attempt *to address personal jurisdiction defects as to certain Florida defendants*." *Id.* (emphasis added).

## II. COSTS AND A STAY UNDER RULE 41(D) ARE NOT WARRANTED HERE.

### A. As in *Spinner Consulting* and *United Rentals*, Plaintiffs' actions promoted judicial economy and were not motivated by any improper purpose.

This case is strikingly similar to *Spinner Consulting* and *United Rentals*. Here, Plaintiffs had a good-faith basis to file in Illinois, including because of Defendants' conduct directed to, and causation of harm in, Illinois, as set forth above. Plaintiffs believed that filing in the Northern District of Illinois would be efficient for a number of reasons, including because Plaintiffs are based in Illinois, and thus many of the witnesses and documents regarding the harm incurred by Plaintiffs are in Illinois, while the Defendants are scattered across multiple states (Connecticut, Florida, and New York). Wexler Decl. ¶ 10.

Moreover, ML Retail had sought the dismissal of the Delaware Action and the New York Action, and had also sought in the alternative to transfer the New York Action to the Northern District of Illinois on the ground that Menkin's and Goureau's claims in both of those actions were required to have been brought in Illinois. Wexler Decl. ¶ 11. At the time Plaintiffs filed the NDIL

14

Action, those issues remained pending in both the Delaware Action and New York Action. *Id.* Thus, Plaintiffs reasonably believed at the time that the Delaware and New York Actions might ultimately be re-filed in the Northern District of Illinois. Accordingly, there were additional potential efficiencies to be gained by filing in Illinois.

Under Supreme Court and Seventh Circuit precedent, however, the court in the NDIL Action could not address the merits of Plaintiffs' claims without resolving the jurisdictional arguments raised by Defendants. *Ruhrgas Ag v. Marathon Oil. Co.*, 526 U.S. 574, 577 (1999) ("jurisdiction generally must precede merits in dispositional order"); *Kromrey v. United States DOJ*, 423 F. App'x 624, 626 (7th Cir. 2011) ("Before deciding any case on the merits, a federal court must ensure the presence of both subject-matter jurisdiction and personal jurisdiction"). Defendants compounded the delay by also improperly seeking a stay of the NDIL Action in favor of an action that never should have been filed, the Delaware Action. Mot. Ex. 6 Dkt. No. 46. Accordingly, when it became clear that Defendants would be able to continue harming Plaintiffs until these issues were resolved, Plaintiffs voluntarily dismissed the NDIL Action so that the parties could "direct their resources to litigating the merits of the case." *Spinner Consulting*, 2020 U.S. Dist. LEXIS 181943, at *6.

Moreover, if Plaintiffs had lost on the issue of personal jurisdiction in the NDIL Action, that dismissal would have been without prejudice, and, as in *Spinner Consulting*, "Plaintiff[s] [would have been] free to refile [their] claim in this district if [they] received a non-merits dismissal for lack of personal jurisdiction." *Id.* at *6; *see also Great Lakes Overseas v. Wah Kwong Shipping Group*, 990 F.2d 990, 998 (7th Cir. 1993) (reversing "the dismissal with prejudice" due to lack of personal jurisdiction because "the dismissal should be without prejudice"); *Kinzy v. Howard and Howard, PLLC*, 2017 U.S. Dist. LEXIS 6262, at *6-7 (N.D. Ill. Jan. 17, 2017) (denying sanctions

following voluntary dismissal and filing new action where "it is possible that the Kinzys voluntarily dismissed the original federal action because the suit was potentially going to be dismissed due to their failure to timely serve the Defendants. That dismissal . . . would have been without prejudice, allowing them to refile their action").

By withdrawing the NDIL Action and re-filing in this Court, the parties reached the same end result that would have occurred had Defendants prevailed on their personal jurisdiction arguments, only they did so without the burden of oral argument or the burden on the Illinois court of drafting a written decision. Accordingly, at the very least, Plaintiffs' actions "resulted in some judicial economy." *Spinner Consulting*, 2020 U.S. Dist. LEXIS 181943, at *6. By contrast, far from promoting judicial economy, Defendants, through their simultaneous application for the same fees and costs in the NDIL Action, are simply causing the parties to incur additional, unnecessary legal fees and further delaying the adjudication of the merits of Plaintiffs' claims.

The fact that, unlike the plaintiff in *Spinner Consulting*, Plaintiffs here opposed Defendants' motions to dismiss and stay in the NDIL Action before withdrawing that action is of no moment. As an initial matter, the fact that there is motion practice and even oral argument prior to a voluntary dismissal does not necessitate an award of costs. *See United Rentals*, 2002 U.S. Dist. LEXIS 26781, at *2. In any event, Plaintiffs' opposition simply confirms that Plaintiffs had a good-faith belief in, and a legal and factual basis for, their assertion of claims in the NDIL Action. Indeed, in seeking sanctions in the NDIL Action, Defendants relied heavily on cases where courts held that a voluntary dismissal was done in bad faith where the plaintiff did not even try to oppose the defendant's motion to dismiss. *See* Wexler Decl. Ex. F 8, 14. Accordingly, had Plaintiffs decided not to oppose the motion to dismiss, Defendants would have wielded that fact as a sword in their effort to obtain sanctions.

Yet here, Defendants argue in this Court that costs and fees are warranted in large part because Plaintiffs *did* oppose the motion to dismiss in the NDIL Action. Mot. 1, 8, 14. Defendants are trying to have their cake and eat it too, asserting that a plaintiff should be required to pay costs regardless of whether they opposed a motion to dismiss before voluntarily dismissing the action. The Court should reject Defendants' lose-lose scenario. The only thing that Plaintiffs' decision to oppose Defendants' motion to dismiss evidences is the fact that Plaintiffs operated in good faith, and with ample legal and factual support.

**B.      The overall context of this dispute and Defendants' conduct further confirm that costs and a stay are not warranted here.**

In determining whether to exercise its broad discretion under Rule 41(d), Plaintiffs submit that the overall context of this dispute and Defendants' conduct is critically important to the Court's analysis. As set forth above, Defendants have sought these same fees and costs in the NDIL Action in the form of sanctions. Defendants could have included their Rule 41(d) application in that same motion. *See United Rentals*, 2002 U.S. Dist. LEXIS 26781, at *1, *3 (considering Rule 41(d) application following voluntary dismissal because "jurisdiction is retained for rulings on collateral matters such as costs and attorneys' fees," citing, *inter alia*, *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000), which held that courts within the Seventh Circuit, such as the Northern District of Illinois, retain "authority" to address Rule 41(d) motions "after filing of second complaint").

Instead, Defendants opted to burden courts in two jurisdictions, and the parties, with simultaneous requests for an award of the same fees and costs. In so doing, Defendants have unnecessarily multiplied the litigation between the parties. This is the same conduct of which Defendants wrongly accuse Plaintiffs to justify their requests for fees and costs. Moreover, it raises the specter of inconsistent or duplicative results in this Court and the Illinois court as to

whether Plaintiffs' conduct promoted judicial economy, whether an award of fees and costs is warranted, the amount of any such fees and costs, and so forth. *Cf.* Wexler Decl. Ex. B 33 (staying the Delaware Action in light of, *inter alia*, the "risk[] [of] inconsistent findings").

Unfortunately, Defendants' decision to burden two courts, and the parties, with simultaneous requests for substantially similar relief is in keeping with Menkin's and Goureau's conduct in their larger campaign against Lemonis. As set forth above, the Delaware Chancery Court already admonished Menkin and Goureau for improperly filing simultaneous, duplicative lawsuits in Delaware and New York. Wexler Decl. Ex. B 5, 32-33.

The fact that Defendants are engaging in aggressive, "scorched earth" tactics bears brief additional emphasis. In addition to violating the rule against claim splitting, as set forth above, Defendants engaged in discovery misconduct for which they were sanctioned in Delaware (Wexler Decl. Ex. A 6:1-5); have clogged the dockets in all of these jurisdictions with unnecessary filings, including gratuitous newspaper articles aimed solely at disparaging Lemonis, and unauthorized "supplemental" filings after motions have been fully briefed (Mot. Ex. 6 Dkt. Nos. 81, 83; Wexler Decl. ¶ 5); and continue to engage in delay tactics in the hopes of preventing any court from adjudicating the merits of Plaintiffs' claims arising out of Defendants' ongoing misconduct. Defendants appear willing to engage in these improper tactics because they are not paying for their legal fees, and thus are incentivized to cause as much duplication and delay as possible, driving up Plaintiffs' legal fees in the process. *See* Wexler Decl. Ex. C.

Awarding Defendants fees and costs here would effectively reward this improper conduct, and incentivize Defendants to keep employing these tactics, to the detriment not only of Plaintiffs, but also the courts in which the parties are litigating. This context accordingly provides added support for denying Defendants' Motion.

## C.      Defendants' arguments to the contrary are meritless.

Despite the foregoing, Plaintiffs wrongly contend that costs and a stay are warranted because: (1) Plaintiffs should have known that their jurisdictional arguments in the NDIL Action were baseless, despite the facts and law showing that the NDIL Action was properly filed (Mot. 14-17); (2) Defendants speculate, without any support, that even though the court in the NDIL Action would have addressed the issue of personal jurisdiction before reaching the merits, and would have dismissed without prejudice if it agreed with Defendants on that issue, that Plaintiffs nonetheless voluntarily dismissed the NDIL Action because they were concerned about an adverse result on the merits (Mot. 17-18); (3) Defendants purportedly will not be able to reuse their work product from the NDIL Action (Mot. 18-19), even though they already reused much of it; and (4) Plaintiffs should have brought their claims in the "first filed" Delaware or New York Actions (Mot. 2, 3).  Each of these arguments is wholly without merit.

### 1.      Plaintiffs' jurisdictional arguments in the NDIL Action were amply supported.

Defendants' primary contention is that there was no good-faith basis for Plaintiffs to argue that the court in the NDIL Action had jurisdiction over Defendants (Mot. 14-17), but the facts and law show squarely otherwise.  In particular, both Plaintiffs are based in, and managed from, Illinois.  Compl. Ex. 8 ¶¶ 5-8.  Plaintiffs established numerous connections between their claims and Illinois, including Defendants' misrepresentations in Illinois, their diversion of goods that originated in, or would have been sold in Illinois, their tortious interference with contracts with mandatory Illinois forum selection clauses, and the fact that Menkin and Goureau traveled to Illinois and (in the case of Goureau) even lived in Illinois for a significant period of time in connection with ML Fashion's business.  Plaintiffs further supported the arguments with ample citations to relevant and controlling case law.  Wexler Decl. Ex. E 4-5, 9-12; Compl. Ex. 8 ¶¶ 8-

15; Compl. Ex. 9 ¶¶ 11-12. Plaintiffs believed, and continue to believe, they had a basis to bring suit in Illinois, and they vigorously opposed Defendants' motion to dismiss for that reason.

Defendants' argument to the contrary boils down to the invalid assertion that reasonable minds could not possibly differ about whether the court in the NDIL Action could exercise personal jurisdiction in light of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, 285 (2014) and the Seventh Circuit's subsequent decision in *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (2018). Mot. 14-18. Personal jurisdiction is not a black-and-white issue, however; there are no "talismanic jurisdictional formulas." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985).

That remains true after *Walden*. In fact, courts in the Northern District of Illinois continue to accept allegations similar to those asserted by Plaintiffs here. As one court explained, "[p]ost-*Walden*, courts in this district have held that a defendant purposely directs its conduct at Illinois and reasonably should foresee being brought to court there when the defendant reaches into Illinois by infringing the intellectual property rights of a plaintiff 'at home' in the state, attempting to exploit the infringing conduct with knowledge that the plaintiff would be injured in Illinois" *MG Design Assocs. v. Costar Realty Info., Inc.*, 224 F. Supp. 3d 621, 632 (N.D. Ill. 2016).

Plaintiffs' allegations in the NDIL Action were very similar to that formulation: Defendants knowingly caused harm to the rights of Plaintiffs undisputedly "at home" in Illinois. Again, as set forth above, Plaintiffs alleged, in a verified complaint and supported by a sworn affidavit, that Defendants stole inventory that originated in Illinois or would have been sold in Illinois but for Defendants' theft; tortiously interfered with contracts with mandatory Illinois forum selection clauses; and made misrepresentations to an individual in Illinois, all with the knowledge that Defendants were causing harm in Illinois. Wexler Decl. Ex. E 4-5, 9-12; Compl. Ex. 9 ¶¶ 11-

12.  These allegations, including the allegations that Defendants redirected inventory that would have been sold to Illinois consumers but for Defendants' misconduct, made clear that Plaintiffs' residence was not the sole link to Illinois.

Defendants' argument that the decision from the court in the Cook County Action somehow bolsters their argument (Mot. 14) is wrong.  As set forth above, *supra* pgs. 8-9, the Cook County Action involved different claims and different underlying facts, along with different parties and different conduct in, or directed to, Illinois than the NDIL Action.  In any event, as set forth above, Plaintiffs moved for reconsideration of the Cook County court's decision.  Wexler Decl. Ex. G.

The Court need not decide whether a court in another jurisdiction could have exercised personal jurisdiction over Defendants.  Suffice to say that Plaintiffs had an amply supported, good-faith basis to assert that the Illinois court could exercise personal jurisdiction over Defendants.

### 2.     Defendants' speculation about Plaintiffs' motives for filing in this Court is baseless.

Defendants next speculate that Plaintiffs dismissed the action not because of Defendants' personal jurisdiction arguments, but because Plaintiffs were afraid of an adverse result on the merits.  Mot. 17-18.  As an initial matter, the Court should not even consider this rank speculation. *Keller Transp., Inc. v. Wagner Enters.*, 873 F. Supp. 2d 1342, 1357-58 (D. Mont. 2012) (denying, *inter alia*, "motion for recovery of . . . attorneys' fees under Fed. R. Civ. P. 41(d)" where "[o]ther than speculation, there is no reason to believe [plaintiff] engaged in forum shopping"); *see also, e.g., Bangl. Bank v. Rizal Commer. Banking Corp.*, 2020 U.S. Dist. LEXIS 49246, at *30 (S.D.N.Y. Mar. 20, 2020) ("Defendant's forum shopping argument is rejected.  It is based on speculation . . . ."); *Toy Biz v. Centuri Corp.*, 990 F. Supp. 328, 332 (S.D.N.Y. Jan. 13, 1998) (denying motion to transfer action where defendant's "contention that [plaintiff] was apparently

concerned about prevailing in Pennsylvania and thus filed the New York suit is pure speculation").

In any event, Defendants are flat-out wrong about Plaintiffs' motives. Wexler Decl. ¶¶ 12-13. Plaintiffs believe that the Illinois court would have issued a ruling in Plaintiffs' favor on the merits if it ever reached those merits, and Plaintiffs filed in this Court precisely because they want a court to be able to reach the merits as soon as possible. *See id.* Moreover, Plaintiffs have no reason to believe that this Court will take a better or worse view of the merits than the Illinois court. *Id.* The re-filing in this Court was solely to promote efficiency and judicial economy in resolving this dispute, and not for any other purpose. *Id.*

Defendants' only "basis" for their speculation is the fact that the court in the NDIL Action denied Plaintiffs' motion for a temporary restraining order and preliminary injunction. Mot. Ex 1. That decision was made on a preliminary record, however. Not only did it not take into account Plaintiffs' verified amended complaint in the NDIL Action (*see* Mot. Ex. 1 5 n.3), but, even more importantly, that decision was entered before the extensive factual showing Plaintiffs submitted in response to inquiries about the underlying facts posed by the Court to all parties. *See* Compl. Exs. 8-10. Plaintiffs had no reason to believe that, when reviewing the amended complaint, Plaintiffs' evidentiary showing, and the parties' legal arguments on Defendants' motion to dismiss, the court in the NDIL Action would have ruled against Plaintiffs on the merits. Wexler Decl. ¶ 12.

Defendants' contention is also directly contradicted by their argument that the personal jurisdiction issue in the NDIL Action was black-and-white. Defendants are wrong about that, but if their personal jurisdiction arguments were as strong as they claim, and the court in the NDIL Action accepted those arguments, then, once again, the court never would have reached the merits, so there would have been no risk of an adverse result on the merits. *See supra* p. 15. Defendants cannot have it both ways. In short, Defendants' speculation does not come close to supporting

their claim for costs and fees.  Their motion should therefore be denied.

> **3.  Defendants have already reused a significant portion of their work product from the NDIL Action.**

While asserting that this action is duplicative of the NDIL Action, Defendants simultaneously argue that "most of the efforts expended in the NDIL Action will not be duplicated here."  Mot. 18-19.  Given the same claims and defendants in both case, this argument is incorrect on its face, and rejected by other courts in this District.  *United Rentals* 2002 U.S. Dist. LEXIS 26781, at *4-5 ("the New Action includes the same claims against the same defendants," and "[t]here is thus no indication that the expenditure of costs by defendants before this Court will not defray litigation expenditures in the Florida action").

The argument is also patently untrue.  Defendants' primary complaint is that they cannot reuse some of the case law cited in their motion to dismiss because some of that case law was from the Seventh Circuit and Illinois.  Mot. 18.  Their assertion ignores that, because the underlying facts are the same, Defendants have or will be making many of the same arguments in this Court.  In fact, as set forth above, *supra* pgs. 9-10, and as a cursory comparison of Defendants' briefs make clear, Defendants' motion to dismiss in this Court ***is identical in many places to Defendants' motion to dismiss in the NDIL Action***, citing more than 20 of the same cases and raising the same arguments, often using the same phrasing and even the same section headings.  *Compare* Dkt. No. 33-1 *with* Wexler Decl. Ex. D.

Defendants also argue that their effort in opposing Plaintiffs' motion for a preliminary injunction in the NDIL Action was "wasted" because Plaintiffs have not sought similar relief in this Court.  Mot. 19.  As an initial matter, it is difficult to see how Defendants' effort was "wasted" when Defendants' prevailed on that motion, which the court in the NDIL Action denied.  This argument also makes no sense because it is effectively an argument that Plaintiffs burdened

Defendants by ***not*** filing a motion in this Court that Defendants presumably would have had to spend time and money opposing. Defendants' bizarre argument has no support and should be rejected.

> **4.      Defendants' contention that there is a "first filed" action in which Plaintiffs should have brought these claims is meritless.**

Defendants offer another audacious argument: that the Delaware Action and New York Action constituted "First Filed Litigation" in which Plaintiffs should have asserted their claims. Mot. 2, 3. Defendants also falsely assert that Plaintiffs "fully acknowledged that the same issues are already being litigated as part of the First Filed Litigation." *Id.* 3.

The sheer brazenness of Defendants' argument cannot be understated. As an initial matter, despite Defendants' misrepresentation to the Court, Plaintiffs unequivocally have not and do not "acknowledge[] that the same issues" are or were being litigated in the Delaware and New York Actions. As set forth above, those actions were filed ***before*** Defendants started operating Nobelle, and have nothing to do with Nobelle. Mot. Exs. 2, 3. The issues in this action are completely separate from the Delaware and New York Actions, which relate to Lemonis' alleged mismanagement of ML Fashion and Gooberry. *See id.*

Moreover, Defendants are asking the Court to find that Plaintiffs should have asserted their claims either: (1) in an action that was stayed because Menkin and Goureau improperly violated the prohibition against claim splitting; or (2) in an action where motions to dismiss and a request for leave to file a motion to transfer venue remain pending. Needless, to say, there is no support for that argument.

Finally, it bears repeating that, in addition to the fact that the allegations and causes of action in the Delaware and New York Actions have nothing to do with the Nobelle-related claims at issue in this Court, ML Fashion is not a party to the New York Action, and thus cannot assert

claims there, and neither Nagrani or Nobelle (parties in this Court) are parties to either the Delaware or New York Action, and thus no claims could be asserted against them in those actions. Mot. Exs. 2, 3. As a result, Plaintiffs' claims are not compulsory counterclaims under the plain language of the Federal Rules. Fed. R. Civ. P. 13(a)(1). There is no reason why Plaintiffs should have brought their claims in those unrelated actions in any event, and particularly not when motions to dismiss were pending in both actions and when one of the actions was ultimately stayed.

Defendants' insistence that Defendants should have somehow filed their claims in the Delaware and New York Actions, which have already been adjudicated to be duplicative lawsuits of each other, and despite all of the foregoing, is wholly unsupported. It should be rejected.

### D. No stay is warranted in this case.

Even if, despite the foregoing, the Court determines that an award of some costs is appropriate, Plaintiffs respectfully submit that a stay would still be inappropriate here. Plaintiffs will pay any legitimate costs awarded promptly because they desire to have the merits adjudicated as soon as possible—which is why they voluntarily dismissed the NDIL Action and filed in this Court in the first place. There has already been a significant delay in the adjudication of the merits stretching back to the commencement of the NDIL Action on August 31, 2020, as the Court recognized in granting a more limited extension of Defendants' time to respond to the Complaint than Defendants had requested. Dkt. No. 28.

Moreover, Defendants have framed the Motion in a manner calculated to cause further delay. Defendants have not provided any evidence of their purported costs and fees, meaning that if the Court were to award costs and fees, there would need to be further evidentiary proceedings to establish the exact amount of costs and fees for "work done in the first action that cannot be used in a second existing or contemplated action." *See Iberia Foods*, 2021 U.S. Dist. LEXIS 79153, at *12-13 (internal quotation marks omitted). Defendants' omission will therefore

inevitably cause yet further delay, a result that Defendants presumably intended.

In light of the foregoing, a stay is not warranted here. *See Preferred Freezer Servs., LLC v. Americold Realty Trust*, 2020 U.S. Dist. LEXIS 27495, at *14-15 (S.D.N.Y. Feb. 18, 2020) ("Given Plaintiff's assurance [of prompt payment], and the fact that this motion has already significantly delayed the adjudication of this case on the merits, I find that a stay is inappropriate").

## **CONCLUSION**

**WHEREFORE**, Plaintiffs ML Fashion, LLC and ML Retail, LLC respectfully request that this Court deny Defendants' Motion and award Plaintiffs such other relief as the Court may deem just and proper under the circumstances.

Dated: June 1, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Michael D. Wexler*
Karen Y. Bitar
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500

Michael D. Wexler (*admitted pro hac vice*)
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5559

Jesse M. Coleman (*admitted pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas 77002
(713) 238-1805
*Attorneys for Plaintiffs ML Fashion, LLC and ML Retail, LLC*