UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ML FASHION, LLC et al.,           :
                                  :
      Plaintiffs,                 :
                                  :
      v.                          :  CASE NO. 3:21-cv-499(JCH)
                                  :
NOBELLE GW, LLC et al.,           :
                                  :
      Defendants.                 :

**RULING ON MOTION TO COMPEL AND MOTION FOR FEES AND COSTS
PURSUANT TO FED. R. CIV. P. 37(A)(5)**

Plaintiffs ML Fashion, LLC and ML Retail, LLC ("plaintiffs") have filed a motion to compel a forensic review of two computers returned to plaintiffs by defendants Nobelle GW, LLC, Stephanie Menkin, Sarit Maman Nagrani, and Nicolas Goureau ("defendants"). (Dkt. #86.) Plaintiffs are also seeking fees and costs pursuant to Rule 37(A)(5) of the Federal Rules of Civil Procedure. (Id.)

The Honorable Janet C. Hall referred this motion to the undersigned for a ruling. After reviewing the parties' submissions, plaintiffs' motion to compel is GRANTED IN PART.

I.   Background

The history of this case was recited in Judge Hall's ruling on plaintiffs' motion to dismiss. (Dkt. #105.) The Court assumes the parties' familiarity with the case but will describe the relevant procedural history here.

1

Plaintiffs allege that defendants stole a desktop computer and a laptop computer from them. Compl. ¶¶ 143-177, 209-211. Plaintiffs allege that these computers contain trade secret information and that defendants have improperly accessed and used the computers. Id.

During discovery, plaintiffs requested that defendants produce the two computers for forensic review. (Dkt. #65-3 at 4.) Defendants objected to this request on the grounds that the request sought irrelevant documents, that the request was not proportional to the needs of the case, and that the documents were protected by the attorney-client privilege and the work product doctrine. (Id.)

On July 6, 2021, plaintiffs filed their first motion to compel wherein they sought to compel production of the computers. (Dkt. #65.)

On September 15, 2021, this Court held a hearing regarding plaintiffs' motion to compel and thereafter ordered the parties to engage in another meet and confer session and to submit a joint status report. (Dkt. #74.) On October 1, 2021, the parties filed their joint status report. (Dkt. # 77.) In the joint status report, defendants agreed to produce the two computers to plaintiffs. (Id. at 9.) Plaintiffs indicated that they had previously "agreed that Defendants could provide a list of files that Defendants allege are proprietary to Defendants, and that

2

those files would be held in quarantine and not reviewed by
Plaintiffs or the forensic vendor pending further discussion
between the parties on that issue." (Id.)

Because it appeared that defendants had agreed to submit
the computers to plaintiffs for forensic review after the
submission of the joint status report, the Court ordered the
parties to submit a second joint status report to inform the
Court as to whether the issue surrounding this Request for
Production, and others, had been resolved. (Dkt. #83.) On
October 28, 2021, the parties filed their second joint status
report. (Dkt. #85.) The parties represented in the second joint
status report that the "only remaining dispute . . . is over
Plaintiffs' reservation of their right to seek contribution of
some or all of the costs for a forensic review of the at-issue
computers from Defendants in the future." (Id. at 2.)

On November 16, 2021, plaintiffs filed their second motion
to compel seeking a forensic review of the two computers. (Dkt.
#86-1.) Plaintiffs' counsel represented that he met and
conferred with defense counsel on November 10, 2021, but the
parties could not agree on a resolution. (Dkt. #86-1 at 4; dkt.
#86-2 ¶ 4.) On December 7, 2021, defendants filed their
memorandum in opposition. (Dkt. #92.) Plaintiffs filed their
reply brief on December 15, 2021. (Dkt. #95.)

On January 11, 2022, this Court held a hearing regarding plaintiffs' first motion to compel. During the hearing, the parties discussed plaintiffs' second motion to compel. The Court noted that the parties had very different explanations for certain items referred to in the briefs related to plaintiffs' second motion to compel. In response to this comment, plaintiffs filed a supplemental brief providing a definition, that defense counsel agreed to, of the LogMeIn program. (Dkt. #103.)

On February 7, 2022, this Court held a hearing to address plaintiffs' second motion to compel. In response to questioning from the Court, plaintiffs filed a second supplemental brief. (Dkt. #109.)

II.  Legal Standard

Under Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling answer, designation, production or inspection." Fed. R. Civ. P. 37(a)(3)(B). "'[T]he burden of demonstrating relevance remains on the party seeking discovery,' while 'the party resisting discovery has the burden of showing undue burden or expense.'" Bagley v. Yale Univ., No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)).

District courts have "wide latitude to determine the scope of discovery, and [courts of appeal] ordinarily defer to the discretion of district courts regarding discovery matters." In re Agent Orange Product Liability Litig., 517 F.3d 76, 103 (2d Cir. 2008) (internal quotation marks and citations omitted); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

Rule 37(a)(5) of the Federal Rules of Civil Procedure provides that a district court must award fees to the prevailing party when a motion to compel is granted or denied in whole; the district court has no discretion. Fed. R. Civ. P. 37(a)(5)(A)-(B). If the motion is granted in part or denied in part, then the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). "As the use of the word 'may' suggests, the decision whether to award fees is within the Court's discretion." Huseby, LLC v. Bailey, No. 3:20-cv-167 (JBA), 2021 WL 3206776, at *16 (D. Conn. July 29, 2021). Courts in the Second Circuit tend to "decline[] to award expenses to either party" where the results of the motion to compel are mixed. Id.; S.C. Johnson & Son, Inc. v. Henkel Corp., No. 3:19CV00805(AVC), 2020 WL 5640528, at *12 (D. Conn. Sept. 22,

5

2020); Saliga v. Chemtura Corp., No. 3:12CV832(RNC), 2013 WL
6182227, at *4 (D. Conn. Nov. 25, 2013).

   III. Discussion

   Defendants proposed to quarantine the following items on
the desktop computer from forensic review: (1) files related to
the Realtime point-of-sale ("POS") software program; (2) the
info@shopnobelle.com email address; (3) files related to the
"TeamViewer" software program; (4) the web browser history; and
(5) files related to the "LogMeIn" software program. (Dkt. #86-1
at 3.) Defendants proposed to quarantine the following items on
the laptop from forensic review: (1) a folder called "Steph
reports"; (2) the web browser history; and (3) files related to
the "TeamViewer" software program. (Id.)

   As a threshold matter, this Court will not compel any
production from the computers based upon ownership. The parties
dispute ownership of the computers (dkt. #86-1 at 6-7; dkt. #92
at 1-2), and ownership of the computers is an ultimate issue in
this case, which cannot be resolved by this Court on a motion to
compel. Compl. ¶¶ 209-215; Answer ¶¶ 209-215, 350.

   Another threshold issue is whether defendants have stated
their objections with specificity. Plaintiffs cite Vaughan Co.
v. Global Bio-Fuels Tech., LLC, No. 1:12-CV-1292(DNH/DJS), 2016
WL 6605070 (N.D.N.Y. May 20, 2016) as a case which dealt with a
motion "remarkably similar" to the instant motion. Plaintiffs

argue that Vaughan dictates the same result here. (Dkt. #95 at
4-5.) In Vaughan, the court allowed the plaintiff to
forensically inspect a former employee's personal laptop over
the employee's objection "other, possibly proprietary and
possibly confidential information is also on the laptop."
Vaughan, 2016 WL 6605070, at *2. The court allowed forensic
inspection of the laptop because the plaintiff "established that
relevant information will likely reside on the hard drive of the
computer," and there was "no other avenue for the Plaintiff to
obtain the sought after discovery." Id. The court also noted
that "what resides on the computer may be critical to the
Plaintiff's case to establish what, if any, confidential
information may have been maintained and/or taken" by the former
employee where the plaintiff alleged the former employee used
plaintiff's trade secrets. Id. The court also noted that it was
unclear whether the former employee's relevancy objections were
stated with specificity or whether the former employee had
created a privilege log. Id. To protect against the potential
disclosure of the employee's information, the court required the
parties to agree on search terms and criteria for the forensic
review and allowed the employee to create a privilege log. Id.
at 3.

    At the hearing on February 7, defense counsel distinguished
the instant situation from the situation in Vaughan by arguing

that defendants had stated with specificity why the documents
sought by plaintiffs are not irrelevant. Tr. 4:16-24, ECF No.
119.

As the Court noted at the hearing, the holding of Vaughan
would dictate a full forensic review of the computers without
the need to assess the relevancy of each item plaintiffs seek.
Here, like Vaughan, plaintiffs have established that relevant
evidence will likely be located on both computers. Plaintiffs
have also established that there is no other way to access the
information they seek. Defendants' relevancy objections have not
been stated with sufficient specificity for the Court to
properly determine whether the items plaintiffs seek should be
compelled. The Court will therefore GRANT IN PART plaintiffs'
motion to compel based on Vaughan. The Court notes that even
though the court in Vaughan ordered disclosure, it also directed
the plaintiff to establish search terms and criteria to generate
relevant evidence. Similarly, this Court will not allow
unlimited discovery of the items plaintiffs seek to discover.
The Court will discuss the relevance of each category of
information sought by plaintiffs and the defendants' proposal
for narrowing each such request.

Because the analysis for each item is the same regardless
of which computer it is located on, the Court will address

certain items together even though they appear on both
computers.

    a. *Realtime POS Software*

    Plaintiffs define the Realtime POS software as the "cash
register" for Nobelle. (Dkt. #86-1 at 10.) Realtime POS "allows
users to access information about all of Plaintiffs' stores as
long as the user has valid login credentials." (Dkt. #109-1 at ¶
4.) It does not appear that defendants dispute this definition
and description of Realtime POS. (Dkt. #92 at 5.) Plaintiffs
have alleged in their complaint that someone by the name of
"Nicolas" attempted to download Realtime POS software onto the
desktop computer. Compl. ¶¶ 154-55.

    Plaintiffs seek to compel a search of the Realtime POS
software to "show transfer and sale information for the
inventory that originated with ML Fashion as it went through
Defendants' 'cash register.'" (Dkt. #86-1 at 10.) Plaintiffs
argue that defendants have not yet produced documentation
showing the sale of inventory that originated at ML Fashion, and
the Realtime POS data will capture those sales. (Id.) At the
hearing, plaintiffs' counsel argued that the Realtime POS would
show whether defendants used plaintiffs' trade secrets,
including vendors or customer lists. Tr. 8:9-15, 9:1-4, ECF No.
119.

Plaintiffs' counsel also clarified that because the computers contained software that would allow a user to remotely log into the ML Fashion POS system, the Realtime POS software *itself* was relevant to plaintiffs' claims for misappropriation of trade secrets and breach of the non-compete agreement. Tr. 7:17-24, ECF No. 119. Plaintiffs' counsel also contended that every sale of inventory at Nobelle is relevant to plaintiffs' damages. Id. 7:25-8:6.

At the hearing, the Court specifically asked plaintiffs' counsel whether there were any search terms or criteria that could be used to narrow the search within the Realtime POS system. Plaintiffs' counsel responded that he was unsure whether it was possible to use search terms in the Realtime POS system. Id. 10:8-11. Plaintiffs' counsel also stated that he was not seeking any temporal limitation for the Realtime POS search, because information predating the formation of Nobelle would be relevant because it would be associated with ML Fashion, and information postdating the formation of Nobelle would be relevant to plaintiffs' claim for misappropriation of trade secrets claim and damages. Id. 11:6-14.

In response, defense counsel argued that a complete search of the Realtime POS system would be disproportionate to the needs of the case as it would reveal every transaction that occurred at Nobelle. (Dkt. #92 at 5.) At the hearing, defense

counsel also argued that responsive documents, including
documents that showed the sale of inventory originating at ML
Fashion, had already been produced. Tr. 6:9-10. Defense counsel
also argued that allowing plaintiffs to access the Realtime POS
system would allow plaintiffs to discover defendants' trade
secrets, including information regarding how much Nobelle paid
for items, vendors, and costs. Id. 7:2-4. After the Court noted
that plaintiffs' counsel had established that at least some
sales recorded in the Realtime POS software would be relevant,
defense counsel proposed to limit the search, if feasible, to
only transactions involving the inventory that allegedly
originated with ML Fashion by narrowing the scope of the search
to the stock keeping unit ("SKU") numbers of that inventory. Id.
13:17-22.

Plaintiffs argued that limiting the search of the Realtime
POS system to only SKU numbers for the inventory allegedly taken
from ML Fashion would exclude other potentially relevant
evidence showing defendants use of plaintiffs' trade secrets,
such as plaintiffs' customer lists, vendor lists, contacts, and
preferences. Id. 14:17-22.

After the hearing, plaintiffs submitted a supplemental
brief with an affidavit from plaintiffs' Chief Technology
Officer, Steven Lugovsky. (Dkt. #109-1.) Mr. Lugovsky stated
that he was "unable to locate any record of logins into the

Realtime POS system in Plaintiffs' files." (Id. ¶ 6.) Because plaintiffs do not have any records of Realtime POS logins on their system, the only way for plaintiffs to be able to see whether defendants attempted to log into their system would be through a forensic audit of the two computers. Vaughan, 2016 WL 6605070, at *2.

The Court finds that some information from the Realtime POS system is relevant. The Court will narrow the scope of the information produced from the Realtime POS system to transactions with SKU numbers identified by plaintiffs as inventory originating at ML Fashion. The Court also narrows the scope of the search, to whatever extent possible, to items that show information that plaintiffs would identify as their trade secrets, which will be identified and provided to the forensic expert. If feasible, search terms may be used to identify such items.

Though plaintiffs argue that the entirety of the Realtime POS software is relevant, the Court does not agree. Plaintiffs argued at the hearing that the computers taken from ML Fashion have the ability to connect to the ML Fashion POS system, and therefore, the "POS system itself is relevant." However, plaintiffs have not established whether the Nobelle Realtime POS system at issue is the same system defendants would use if they were attempting to access the ML Fashion POS system. Tr. 7:21-

12

24, ECF No. 119. As for plaintiffs' damages, there are other ways that plaintiffs can obtain Nobelle's sales information, including through sales reports which defendants represent have already been produced. (Dkt. #92 at 7-8.)

Without knowing fully what is possible in the Realtime POS system, the Court narrows the scope of the search as discussed above. Defendants will be able to review this information first and create a privilege log as needed.

b. *Info@shopnobelle.com*

Plaintiffs argue that the relevance of the info@shopnobelle.com email address is established by the name and nature of the email address: It is an email address dedicated to information about shopping at Nobelle. Tr. 19:20-22, ECF No. 119. In their motion to compel, plaintiffs argue that this email address is relevant if it contains any communications about inventory originating with ML Fashion or products sold that directly compete with ML Fashion. (Dkt. #86-1 at 11.) Plaintiffs argue that defendants do not dispute that this email address may contain responsive information. (Dkt. #95 at 6.) At the hearing, plaintiffs' counsel proposed that the forensic expert could create a PST file for the email account to be produced to counsel, who would then create a list of search terms to be run through the PST file.

Defendants argue that this email account is not relevant. Defendants argue that they have already produced documents to other Requests for Production which provide the information that plaintiffs' seek to obtain from the info@shopnobelle.com account, and, at the hearing, defense counsel stated that these responsive documents, to the best of his knowledge, did not come from the info@shopnobelle.com account. He also argued that plaintiffs were instead fishing for defendants' customer list. Tr. 17:19-20, ECF No. 119.

The Court agrees that any information within this email address related to selling inventory originating with ML Fashion or emails that shows Nobelle is utilizing plaintiffs' trade secrets, including potential customers, would be relevant. Any other information, including unrelated merchant or customer inquiries, is irrelevant.

The Court will require the forensic expert to create a PST file of the info@shopnobelle.com email address for attorney's eyes only. Defense counsel will be required to create a privilege log to address any concerns that this email address may contain defendants' trade secrets. The parties will then work together to develop a list of acceptable search terms to provide to the forensic expert.

    c. *TeamViewer*

    Plaintiffs define and describe TeamViewer as "a videoconferencing platform such as Zoom." (Dkt. #86-1 at 11.) Plaintiffs seek discovery of any video meetings recorded on TeamViewer, if they exist, which includes discussions of the facts or issues underlying this lawsuit. (Id.) Plaintiffs argue that any meetings that occurred between defendants regarding Nobelle, including discussions of business operations or inventory, are relevant to plaintiffs' claims for breach of the non-compete agreement and misappropriation of trade secrets. Tr. 22:8-13, 23:2-7, ECF No. 119.

    At the hearing, defendants argued that none of the information contained within the recorded meetings is relevant. Id. 23:20-24. After receiving some pushback from the Court, defense counsel clarified that his statements that TeamViewer contained no relevant information were based on representations from his clients. Id. 26:6-9. Defense counsel also clarified that there were no meeting minutes. Id. 26:15-19.

    Neither plaintiffs' counsel nor defense counsel proposed a way to limit discovery of the TeamViewer recordings. Plaintiffs suggested that if defendants were able to demonstrate that some categories of information discussed in the TeamViewer recordings were not relevant, for example, discussion of products that

would not be in direct competition with ML Fashion, then that information would not have to be produced. Id. 30:8-15.

The Court agrees that discussions relating to the operation of the business, including inventory, customers, vendors, etc., is relevant but only as it relates to plaintiffs' inventory or trade secrets. It is also clear that the only way to access this information would be through viewing the recordings, if they exist, as there are no meeting minutes.

Because neither party is certain that the TeamViewer recordings, to whatever extent they exist, contain relevant information, the Court will order a version of the recordings be produced to defense counsel for review. Defense counsel can then state more specifically whether the recordings contain relevant information and/or create a privilege log by noting the specific timestamps in the videos that contain irrelevant or privileged discussion. The forensic expert can then produce the relevant portions of the videos to plaintiffs.

d. *Web Browser Histories*

Plaintiffs argue that the web browser histories are relevant "to the extent Defendants were researching products identical or otherwise competitive to Plaintiffs' products; Plaintiffs' vendors; Plaintiffs' current and former employees; and so forth." (Dkt. #86-1 at 11.)

16

Plaintiffs' counsel suggested at the hearing that the forensic expert produce a report of the web browser histories for attorney's eyes only so counsel could identify irrelevant information, and the parties would have another meet and confer session if there were any disputes. Tr. 36:1-11, ECF No. 119. While defense counsel took umbrage with opposing counsel being able to see the web browser histories in any format, he conceded that this proposal was better than prior proposals. Id. 37:5-8.

The Court agrees that the web browser histories should be produced. First, plaintiffs have no other way to access this information as the web browser histories are only available on the computers. Second, the web browser histories are relevant in that they could show evidence of defendants utilizing plaintiffs' trade secrets, such as interacting with certain vendor websites. For the same reasons that the web browser histories could reveal plaintiffs' trade secrets, they could also reveal defendants' trade secrets.

The Court will order that a report of the web browser histories be produced for attorney's eyes only to defense counsel to create a privilege log. Then, each party will review the report and identify the information it believes to be relevant. To the extent that there are any disputes, the parties are ordered to meet and confer to try to resolve any issues.

e. *LogMeIn*

Plaintiffs stated in their motion to compel that the LogMeIn "program allows users to remotely access any of Plaintiffs' MARCUS stores." (Dkt. #86-1 at 1.)

Defendants argued that "[t]he [LogMeIn] program was used exclusively to connect to Nobelle's Point of Sale system directly," and "[a]t no point did Defendants or Defendants['] employees use this program to access any of Plaintiffs['] information." (Dkt. #92 at 7.) Defendants argued at the hearing that LogMeIn would contain confidential data showing how Nobelle operates. Tr. 41:16-20, ECF No. 119.

In the first supplemental brief filed after the hearing on January 11, 2022, the parties defined LogMeIn as "a form of remote access software that 'allows [a user] to remotely control a computer from a different location using an Internet connection' such that the remote user can 'access the desktop and all its apps, files, and information -- as if [the user was] sitting in front of it.'" (Dkt. #103-1 at 2.)

In their motion to compel, plaintiffs argued that the LogMeIn program contains relevant information because it allows users to remotely log into plaintiffs' stores. (Dkt #86-1 at 12.) Plaintiffs allege that defendants Stephanie Menkin and Sarit Maman Nagrani utilized this software to gain access to plaintiffs' confidential information, such as inventory,

18

pricing, and employee names, to compete with plaintiffs' stores. (Id.)

During the hearing on February 7, the Court asked plaintiffs' counsel whether it is possible to determine on plaintiffs' system when someone attempted to log in using the LogMeIn software. Tr. 37:25-38:8, ECF No. 119. Plaintiffs' counsel represented that he did not believe that plaintiffs' system would show all attempted logins. Id. 38:16-18. In his affidavit submitted after the February 7 hearing, Mr. Lugovsky stated that the LogMeIn program had been uninstalled from all ML Fashion computers, so plaintiffs "have no centralized way to retrieve data regarding remote logins to ML Fashion's computers via LogMeIn." (Dkt. #109-1 ¶ 3.)

Because plaintiffs have no access to this information on their own, and because it is relevant to plaintiffs' claims for misappropriation of trade secrets and violation of the Computer Fraud and Abuse Act, the Court will grant plaintiffs' motion to compel a forensic review of the LogMeIn program.

To address defendants concerns that a forensic search of the LogMeIn program would reveal confidential or proprietary information about Nobelle, the Court will narrow the scope of the search. To whatever extent possible, the forensic expert will produce a report for attorney's eyes only, and counsel will have the opportunity to review the report and identify relevant

19

information and come up with search terms. Defense counsel can
also create a privilege log. If any disputes arise, the parties
are to engage in another meet and confer session.

    f. *"Steph reports"*

    Plaintiffs seek to discover the contents of this folder.
Plaintiffs argued in their motion to compel that any documents
created during defendant Menkin's employment with ML Fashion are
discoverable as they would belong to plaintiffs. Plaintiffs
argued that "Defendants have refused to explain why the
documents in this folder are purportedly not discoverable,
despite bearing the burden to do so." (Dkt. # 86-1 at 12.)

    Defendants argue that the folder contains Nobelle's sales
reports, which were either already provided to plaintiffs or are
irrelevant. (Dkt. #92 at 7-8.) At the hearing, defense counsel
clarified that none of the documents in the folder were created
while Menkin was employed by plaintiffs. Tr. 44:10-14, ECF No.
119. Defense counsel also argued that because the reports
concern the operation of Nobelle, the reports were trade secret.
Id. 44:4-5.

    Plaintiffs offered three theories of relevance at the
hearing. Plaintiffs first argued that because defendants have
already produced some of the reports in the "Steph reports"
folder, the remaining reports are likely relevant, and any
argument that the remaining reports are irrelevant is undercut

by this production. Id. 45:3-13. Second, the reports are
relevant to the extent that they demonstrate Nobelle's
competition with ML Fashion. Id. 45:14-23. Finally, plaintiffs
argue that any sales reports involving inventory that was
identified by Menkin during the litigation in the Middle
District of Illinois would be relevant. Id. 46:5-14.

The Court agrees that any sales reports involving inventory
originating with ML Fashion that Menkin admitted to selling is
relevant. The Court also agrees that the sales reports would be
relevant to plaintiffs' damages for their non-compete claim.

The Court is left, however, without any understanding of
what the remaining documents in the "Steph reports" folder are
and whether they are actually relevant for the reasons
plaintiffs' counsel articulated. Based upon the representations
defense counsel has made about the documents in the "Steph
reports" folder, the Court is unable to discern why some sales
reports from this folder have been produced and why some have
been withheld. The only explanation defendants have offered for
why some documents have been withheld is that "the parties
agreed [the withheld documents] were outside the scope of
discovery." (*See* dkt. #92 at 7.) However, plaintiffs' briefs do
not seem to indicate that such an agreement currently exists.
(*See* dkt. #95 at 11.) Defense counsel has not stated with

specificity why these reports are outside the scope of discovery in light of the relevance plaintiffs' counsel has established.

The Court therefore ORDERS defense counsel to file a supplemental brief detailing defendants' good faith basis for withholding the documents. The supplemental brief shall be filed 14 days from the date of this Order. The Court will not address the issue of fees until it has ruled on the production of the documents within the "Steph reports" folder.

IV.  Conclusion

For the reasons set forth above, plaintiffs' motion to compel and for fees and costs is GRANTED IN PART with the limitations as set forth above. The Court reserves the issue of the "Steph reports" folder until after it has received supplemental briefing from defense counsel.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 25th day of May, 2022 at Hartford, Connecticut.

                                    /s/
                        _____
                        Robert A. Richardson
                        United States Magistrate Judge