# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ML FASHION, LLC, and ML RETAIL, LLC, | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:21-CV-00499 (JCH) |
| v. | : | |
| | : | |
| NOBELLE GW, LLC, STEPHANIE | : | |
| MENKIN, SARIT MAMAN NAGRANI, | : | June 2, 2022 |
| and NICOLAS GOUREAU, | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' RULE 41(d) FEE APPLICATION (DOC. No. 114)

## I.    INTRODUCTION

Pending before the court is defendants' application for costs pursuant to Federal Rule of Civil Procedure 41(d) ("Rule 41(d)").  See Defs.' Mem. of Law Addressing the Appropriate Amount of Costs Awarded to Defs. Pursuant to Fed. R. Civ. P. 41(d) ("Defs.' Mem.") (Doc. No. 114); Defs.' Reply Mem. of Law Further Addressing the Appropriate Amount of Costs Awarded to Defs. Pursuant to Fed. R. Civ. P. 41(d) ("Defs.' Reply") (Doc. No. 128).  In their Application, defendants seek $412,362.30 in attorneys' fees and other costs related to a previous action filed by plaintiffs against them in the United States District Court for the Northern District of Illinois (the "Illinois Action").  Defs.' Mem. at 15.  Plaintiffs substantially oppose the fee application, arguing that no more than $7,605.71 in costs should be recoverable under Rule 41(d).  See Pls.' Resp. to Defs.' Mem. Regarding Fees and Costs at 2 ("Pls.' Mem.") (Doc. No. 125).

The court has meticulously reviewed the parties' Memoranda and supporting exhibits, including the line-by-line billing entries submitted by defendants.  For the reasons stated below, the court in its discretion orders plaintiffs to pay $217,381.45 in costs associated with the Illinois Action.

1

## II.    BACKGROUND

Plaintiffs ML Fashion, LLC, and ML Retail, LLC, brought this action on April 9, 2021, alleging eleven separate causes of action against defendants Nobelle GW, LLC, Stephanie Menkin, Sarit Maman Nagrani, and Nicholas Goureau, all related to the opening of Nobelle, a retail fashion store.  The case was only the latest in a long string of disputes between these parties, who have litigated in courts across the country for the past two years following the dissolution of their business relationship.  See ML Fashion, LLC v. Nobelle GW, LLC, No. 3:21-CV-00499, 2022 WL 313965, at *4-7 (D. Conn. Feb. 2, 2022) (noting that this case is one of seven total actions involving these parties and summarizing each of those actions).

Relevant here is the Illinois Action that plaintiffs filed against defendants on August 31, 2020, and – after seven months of heated litigation – voluntarily dismissed on March 26, 2021.[1]  Id. at *5-6.  Plaintiffs then proceeded to "'re-fil[e] their claims in this [c]ourt'" two weeks later.  Id. at 5 (quoting Compl. at ¶ 207 (Doc. No. 1)).  "Although the Verified Amended Complaint in [the Illinois Action] contain[ed] some differences from the operative Complaint here, they [were] virtually identical in many respects and include[d] the exact same parties."  Id. at *5.  Because plaintiffs had "voluntarily dismissed [their] action in [Illinois and] file[d] an action based on or including the same claim[s] [here] against the same defendant[s]", plaintiffs proceeded to move for costs under Rule 41(d).  Fed. R. Civ. P. 41(d).  The court granted that Motion on February 2, 2022, finding that an award of costs associated with the Illinois Action was appropriate

---

[1] The litigation in the Illinois Action included, inter alia, a request for a Temporary Restraining Order; two Motions to Dismiss (though only one fully briefed); a Motion to Stay Proceedings; and a Motion for Sanctions and Attorneys' Fees.  See Decl. of Gerard P. Fox, Esq. at ¶ 4 (Doc. No. 116).

under Rule 41(d) and directing the parties to file further briefing on the amount of costs.

See ML Fashion, LLC, 2022 WL 313965, at *8-11.  The parties did just that, with

defendants seeking to recover $412,362.30 in costs related to the Illinois action and

plaintiffs arguing that no more than $7,605.71 is appropriate.  See Defs.' Mem. at 15;

Pls.' Mem. at 2.[2]

## III.   STANDARD OF REVIEW

Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any

court files an action based on or including the same claim against the same defendant,

the court . . . may order the plaintiff to pay all or part of the costs of that previous action.

Fed. R. Civ. P. 41(d).  In its February Ruling, this court noted that "[p]laintiffs [did] not

dispute that they ha[d] run afoul of Rule 41" and, accordingly, held that plaintiffs were

entitled to costs associated with the Illinois Action under Rule 41(d).  ML Fashion, LLC,

2022 WL 313965, at *9.  The exact amount of those costs was left undecided and is the

subject of this Ruling.

The purpose of Rule 41(d) is well established: it is meant "'to serve as a deterrent

to forum shopping and vexatious litigation.'"  Horowitz v. 148 South Emerson Assocs.

LLC, 888 F.3d 13, 23 (2d Cir. 2018) (quoting Andrews v. America's Living Ctrs., LLC,

827 F.3d 306, 309 (4th Cir. 2016)).  Given this purpose, it is also well established in the

Second Circuit that "district courts may award attorneys' fees as part of costs under

Rule 41(d)."  Id. at 24.  There are, however, limits to the costs, including attorneys' fees,

---

[2] Given the complexity of the previous cases involving these parties, the court presumes
familiarity with that background, which it has summarized in a previous Ruling.  See ML Fashion, LLC,
2022 WL 313965, at *4-7.  It also presumes familiarity with the parties' filings related to the Rule 41(d)
Application at issue here, and discusses those Memoranda and supporting exhibits only as necessary to
articulate the reasons for its Decision.

that can be recovered pursuant to Rule 41(d).  First, "[o]nly reasonable costs are recoverable." Loubier v. Modern Acoustics, Inc., 178 F.R.D. 17, 22 (D. Conn. 1998). Second, Rule 41(d) "has been interpreted in this Circuit to include [only the] payment of attorney's fees ... that cannot be used" in the existing action. Pelczar v. Pelczar, No. 16-CV-55, 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017).  Within these parameters, "District [C]ourts may use their discretion 'to award attorneys' fees as part of costs' under Rule 41(d)." Spinner Consulting LLC v. Stone Point Capital LLC, No. 3:19-CV-1341, 2020 WL 5810438, at *1 (D. Conn. Sept. 30, 2020) (quoting Horowitz, 888 F.3d at 25).

   In determining whether a fee amount is "reasonable," courts in this Circuit begin with what "is generally referred to as the 'lodestar.'" Crown Awards, Inc. v. Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 297 (S.D.N.Y. 2008).  The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Liberty Synergistics, Inc. v. Microflo, Ltd., No. 11-CV-0523, 2018 WL 5801280, at *5 (E.D.N.Y. Nov. 6, 2018) (internal quotations and citations omitted).  It "should be based on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (internal quotations and citations omitted).  "[B]oth [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a presumptively reasonable fee." Liberty Synergistics, Inc., 2018 WL 5801280, at *5 (internal quotations and citations omitted).

   Second, defendants are entitled to recover all "fees from the previous action except those fees that bear on the current matter." Lombardo v. R.L. Young, Inc., No.

18-CV-188, 2018 WL 6727356, at *3 (D. Conn. Dec. 21, 2018).  In differentiating between work that is reusable and work that is not, courts in this Circuit have identified certain categories of attorneys' work that generally is recoverable.  For instance, courts have held that preparing removal papers, corporate disclosure statements, and motions for extensions of time for the prior cases usually constitutes work that cannot be reused in the refiled case.  Benitez v. Good2Go Ins., Inc., No. 3:20-CV-69, 2020 WL 4529879, at *2-4 (D. Conn. Aug. 6, 2020).  The same can be true of transfer motions, settlement discussions, attendance at status conferences, and other work related to procedural matters in the prior cases.  See, e.g., Cotiviti, Inc. v. Deagle, 501 F. Supp. 3d 243, 265 (S.D.N.Y. 2020); Jimenez v. GEICO Indemnity Co., No. 3:19-CV-00897, 2020 WL 3451821, at *3-4 (D. Conn. June 24, 2020).  Still, these decisions are non-exhaustive and context-dependent: in determining if work from the previous actions is reusable in the instant one, "[i]t is well-settled" that courts, in exercising their discretion, should develop the factual record necessary to make such a determination and ensure that the "party seeking an award of fees ... submit[s] evidence supporting the hours worked and rates claimed."  Iberia Foods Corp. v. Latinfood U.S. Corp., No. 20-CV-3009, 2021 WL 1616916, at *3 (E.D.N.Y. Aug. 26, 2021) (internal quotations and citations omitted); see also Diplomatic Man, Inc. v. Nike, Inc., No. 08-CV-139, 2009 WL 935674, at *5 (S.D.N.Y. Apr. 7, 2009) ("[a]s required, [defendant] has submitted detailed time records from both [law firms] that specif[ies], for each attorney, the date, the hours expended, and the nature of the work done") (internal quotations and citations omitted).

## IV.    ANALYSIS

In support of their request for $412,362.30, defendants have submitted detailed, itemized billing receipts from Gerard Fox Law P.C. ("Fox") and Freeborn & Peters, LLP,

which served as local counsel for defendants in the Illinois Action.  <u>See</u> Am. Ex. 1 (Doc. No. 117); Ex. 2 to Decl. of Gerard P. Fox, Esq (Doc. No. 116-2).  They have further divided those costs into eight different categories for which they seek recovery.  <u>See</u> Defs.' Mem. at 3-9.  Those categories, with the hours billed and total amount of costs in parentheses, are:

(1)   "Case work-up, procedural filings & routine costs" (hours: 11.9; $7,927.50 attorneys' fees and $6,890.80 in research and filing costs for a total of $14,818.30)

(2)   "Motion to Dismiss briefing [on] jurisdiction in Illinois (hours: 187.9; $115,634)"

(3)   "Motion to Dismiss briefing [on] failure to state a claim (hours: 253.5; $143,542)"

(4)   "Motion to Stay briefing (hours: 81.7; $50,695.50)"

(5)   "TRO/injunction briefing (hours: 27.5; $16,827.50)"

(6)   "Responses to the Illinois court's requests for further information (hours: 35.2; $22,093)"

(7)   "Motion for sanctions (hours: 65.6; $39,480)"

(8)   "Work billed by Illinois local counsel (hours: 23; $8,792.50)"

<u>Id.</u>[3]

_____

[3] The court notes that the costs in these categories total only $411,882.80, less than the $412,362.30 requested by defendants.  This appears to be because, in their Memorandum, defendants neglected to include a ninth category seeking $480.00 for conducting 0.8 hours of "some limited discovery" mentioned elsewhere in their supporting documents.  <u>See</u> Decl. of Gerard P. Fox, Esq. at ¶ 15(g) (Doc. No. 116).  Adding in that additional $480 would total the exact $412,362.30 that defendants request.  However, because defendants did not put forth an argument in their Memorandum as to why they should be reimbursed for this category and, crucially, plaintiffs were therefore not given the opportunity to respond, the court declines to award the $480 in costs for limited discovery in the Illinois Action.  Even if they had, the court notes that "work done in previous cases that was a necessary part of the process of generating [ ] discovery is not necessarily recoverable under Rule 41(d)."  <u>MSP Recovery Claims, Series LLC v. Hartford Fin. Serv. Group, Inc.</u>, No. 20-CV-00305, 2021 WL 5563982, at *6 (D. Conn. Nov. 29, 2021) (internal quotations and citations omitted).  This is because "initial disclosures often produce information that can be reused in the later lawsuit, even if discovery does not progress much beyond that."  <u>Id.</u>

Plaintiffs argue that only $7,605.71 of these costs should be awarded "in light of the context of this case." Pls.' Mem. at 2. As both parties have staked out extreme, unreasonable positions, the court below first conducts a partial lodestar analysis to determine whether the fees themselves are reasonable, before then analyzing each category in turn to assess what percentage of costs in that category are recoverable.

A. Lodestar Analysis

1. Hourly Rate

The lodestar "creates a presumptively reasonable fee." Liberty Synergistics, Inc., 2018 WL 5801280, at *5 (internal quotations and citations omitted). It is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Id. When calculating the reasonable hourly rate, courts should base it "on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community." Kirsch, 148 F.3d at 172 (internal quotations and citations omitted). "The pertinent community typically is the forum of the litigation (even if that is not where . . . counsel has its primary office), unless the movant shows that a reasonable, paying client would have retained out-of-district counsel." Shuman v. Aetna Life Ins. Co., No. 15-CV-01006, 2017 WL 2662191, at *7 (D. Conn. June 20, 2017) (internal quotations and citations omitted); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 191 (2d Cir. 2008) (holding that "a district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates" but creating a presumption against applying such an out-of-district rate that can be rebutted "only in the unusual case . . . [where] the

party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances").

Here, the court cannot conclude that defendants' decision to retain out-of-district counsel or the rates charged by defense counsel were unreasonable. Although the forum of the litigation was Chicago, defendants hired a law firm in Los Angeles (and, to be sure, local counsel with a more limited role) to defend them. However, plaintiffs were also represented by a high-powered, national law firm with offices across the country, including Chicago, and an attorney from Houston made an appearance for plaintiffs in the Illinois Action. This is not to suggest anything improper about the vigor with which these parties have pursued these claims; but it is to say that, given the numerous actions involving these parties that have metastasized across the country, it is wholly reasonable for defendants to have sought and retained out-of-district counsel.

Moreover, as defendants correctly point out, the prevailing rates in the Chicago and Los Angeles markets appear to be fairly similar.  See Defs.' Mem. at 10.  At the very least, the rates charged by defense counsel in the Illinois Action are comparable to what courts in Chicago have determined to be reasonable.  "[N]umerous judges in [the Northern District of Illinois] have considered the Laffey Matrix as at least one factor in determining the reasonableness of hourly rates sought."[4]  Hadnott v. City of Chicago, No. 07 CV 6754, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (citing cases); see also Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 651 (7th Cir. 2011) (holding that a district court does not err by using the Laffey Matrix, but does if it does so "without

---

[4] The Laffey Matrix is a table of attorneys' fees that sets out an "equitable way to determine appropriate legal fees for fee petitions . . . in the Washington-Baltimore area" and, often, throughout the country. See http://www.laffeymatrix.com/see.html (last visited May 26, 2022).

giving plaintiff[s] an opportunity to respond").[5]  Defense counsel's rates are comparable

to the applicable Laffey Matrix rates and, more importantly, they have submitted further

declarations and biographies of each attorney that worked on the Illinois action

supporting the rates the firm charged.  See http://www.laffeymatrix.com/see.html (last

accessed on May 16, 2022); Decl. of Gerard P. Fox, Esq. (Doc. No. 116); Ex. 3 to Decl.

of Gerard P. Fox, Esq. (Doc. No. 116-3); Decl. of Marina V. Bogorad, Esq. (Doc. No.

115).  This, coupled with the complexity of the litigation between the parties, leads the

court to conclude that the rates charged by defense counsel were reasonable.

> 2.     Number of Hours

That does not mean, however, that the court agrees that the number of hours

billed by defense counsel were also reasonable.  Specifically, the court finds that the

percentage of the total hours billed by partners at Fox is excessive.  Of the 663.3 hours

billed in categories one through seven, 310.2 hours – or approximately 47% - were

billed by partners.  See Decl. of Owen R. Wolfe at ¶ 9 (noting 236.3 hours for partner

Marina Bogorad; 70 hours for partner Lauren Greene; and 3.2 hours for named partner

Gerard Fox).[6]  As one court in this Circuit has recognized, "there is ample authority . . .

for reducing a fee award where the legal hours recorded by [defendants'] counsel fell

unusually heavily on partners with high hourly rates."  Beastie Boys v. Monster Energy

Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015).  While the mundanity of some of the tasks

---

[5] Here, plaintiffs have had an opportunity to respond, and have specifically addressed the applicability of the Laffey Matrix to this case.  See Pls.' Mem. at 23.

[6] The Wolfe Declaration states that Fox billed 656.10 total hours, which appears to be in error. See id.  In addition, Gerard Fox appears to have billed 3.9 hours on the matter, not 3.2, bringing the total number of partner hours to 310.2.  See Am. Ex. 1 at 1, 9 (Doc. No. 117) (two billing entries for Gerard Fox for 3.2 hours and 0.7 hours, respectively).

performed by partners in <u>Beastie Boys</u> exceeded the general complexity of the tasks performed by partners here, <u>id.</u> at 53, the court still concludes that assigning almost 50% of the work in the Illinois Action to partners with high hourly rates was surfeit. Accordingly, a reduction in the fee award based on excessive hours billed by partners is warranted here.

Although courts have consistently endorsed broad, "across-the-board percentage cuts as a practical means of trimming fat from a fee application" where they find the percentage of hours billed by partners to be excessive, a more targeted reduction is possible here. <u>Melodrama Publishing, LLC v. Santiago</u>, No. 12-CV-7830, 2015 WL 2380521, at *6 (S.D.N.Y. 2015) (reducing total charges by a flat rate of 25% after accounting for excessive partner hours and other factors) (internal quotations and citations omitted). The 310.2 hours billed in this case by partners were billed at an average rate of approximately $697.28.[7] Setting aside the 167.4 hours billed by Maja Lukic in this matter, who at the time was Of Counsel at Fox, the remaining 185.7 hours billed by associates in the Illinois Action were charged at an average rate of approximately $472.98 per hour.[8] Had only 20% instead of 47% of the total hours billed

---

[7] This number includes 3.2 hours billed by Gerard Fox at $800 per hour; 0.7 hours billed by Gerard Fox at $600 per hour; 70 hours billed by Lauren Greene at $600 per hour; and 236.3 hours billed by Marina Bogorad at $725 per hour. <u>See</u> Decl. of Marina Bogorad, Esq. at ¶ 3; Decl. of Gerard P. Fox, Esq. at ¶¶ 7-8 (Doc. No. 116); Decl. of Gerard P. Fox, Esq. at ¶ 4 n. 1 (Doc. No. 136); Decl. of Owen R. Wolfe at ¶ 9; Am. Ex. 1 (Doc. No. 117). In total, these partners billed 310.2 hours for $216,297.50, an average rate of approximately $697.28 per hour.

[8] The court arrives at this figure by starting with the $411,882.80 requested by defendants in all eight categories. It then subtracts out the $8,792.50 billed by local counsel in Category Eight; the $6,890.80 in research and filing costs in Category One; the $216,297.50 charged by partners, <u>see</u> <u>supra</u> at 10 n. 6; and the $92,070 charged by Counsel Maja Lukic (167.4 hours at a rate of $550). <u>See</u> Decl. of Owen R. Wolfe at ¶ 9; Decl. of Gerard P. Fox, Esq. at ¶ 9. That leaves a total of $87,832 billed by associates.

From the 663.3 hours billed in categories one through seven (which already excludes local counsel), the court then subtracts the 310.2 hours billed by partners and the 167.4 hours billed by Lukic,

by Fox been by partners – which the court here concludes is reasonable given the heavy involvement of Counsel Lukic in this matter – then Fox partners in the Illinois Action would have billed a total of only 132.7 hours.  That would mean 177.5 of the hours actually billed by partners at an average rate of $697.28 per hour would have instead been billed by associates at an average rate of $472.98 per hour.  This would have reduced the total charges of $396,199.50 in Categories One through Seven (setting aside the research and filing costs in Category One) by $39,813.25, or approximately 10%.

Accordingly, as the court proceeds with its analysis of each of the eight categories for which defendants seek reimbursement, it reduces the award sought for Fox attorneys' fees by 10% across the board.  It is to each of those categories that the court now turns.

B. <u>Categories for Reimbursement</u>

Defendants are entitled to recover all "fees from the previous action except those fees that bear on the current matter."  <u>Lombardo</u>, 2018 WL 6727356, at *3.  In addition, as the court moves through each of the categories below, it continues to consider the second prong of the lodestar analysis – whether the number of hours spent by defense counsel in each of the categories was reasonable.

---

to arrive at a total of 185.7 hours billed by associates.  Billing $87,832 for 185.7 hours of work comes to an average rate of approximately $472.98 per associate hour.

1.     Categories Five, Six, and Eight

The court begins by awarding defendants all the costs sought in Categories Five,

Six, and Eight, minus 10% of the attorneys' fees for hours billed by Fox.  This amounts

to a total of $43,820.95.[9]  Each of these categories is reimbursable under Rule 41(d).

Category Five includes attorneys' fees related to briefing plaintiffs' Motion for a

Temporary Restraining Order ("TRO") and Preliminary Injunction in the Illinois Action.

Because plaintiffs have not moved for emergency relief in this action, defendants argue

that all this work is recoverable.  See Defs.' Mem. at 7; Defs.' Reply at 7-8.  Plaintiffs

counter by arguing that had they filed the Illinois Action here in the first place, they

would have filed the same Motion, and therefore that these expenses would have been

incurred here regardless.  See Pls.' Mem. at 17-18.  Courts in this Circuit have split on

the utility of work done related to a TRO or preliminary injunction in the prior case, and

whether an award of such costs is appropriate under Rule 41(d).  Compare Preferred

Freezer Serv., LLC v. Americold Realty Trust, No. 19-CV-2926, 2020 WL 774132, at *4

(S.D.N.Y. Feb. 18, 2020) (finding defendant's argument for awarding costs under Rule

41(d) for work done related to a preliminary injunction motion in the prior action to be

"unconvincing . . . [g]iven the near identical nature of the claims [in the two cases] and

the fact that the preliminary injunction motion required an assessment of whether the

claims had a likelihood of success on the merits – work that will likely be useful in the

[instant] [a]ction", but still awarding "at least some costs" because "it [was] unlikely that

all of [d]efendant's work from the [previous] action w[ould] be recycled" in the present

---

[9] This includes $15,144.75 in Category Five (90% of the $16,827.50 of attorneys' fees sought); $19,883.70 in Category Six (90% of the $22,093 in attorneys' fees sought); and the full $8,792.50 for local counsel in Category Eight.

one), with Order at 50, 50 n. 16, Horowitz v. South Emerson Assocs., No. 16-CV-2741 (S.D.N.Y. May 14, 2018) (Doc. No. 43) (finding that "it does not appear that any of the work performed by [ ] counsel in the first action can b[e] utilized in this action" where that work included defending against an application for a TRO and preliminary injunction because "the research performed by [ ] counsel in the [prior] [a]ction involved either Eleventh Circuit caselaw or Georgia state law, neither of which is applicable in this case") (citations omitted).

Here, the court finds that an award of costs for the emergency motion briefing is appropriate for three reasons. First, the manner in which plaintiffs' claims have evolved from their initial Complaint in the Illinois Action; to their Verified Amended Complaint in that same action; through their initial Complaint before this court; and to their Amended Complaint, which is now the operative Complaint in this ever-shifting action, is significant enough that the continued utility of the work conducted for the initial TRO is questionable at best. This is even more true given that the work done in response to that Motion principally involved Seventh Circuit caselaw, not Second Circuit caselaw. Third, the court is unconvinced by plaintiffs' argument that an award of costs is not appropriate because they would have moved for emergency relief in Connecticut anyway had they filed here first. "[T]hat proposition is speculative", and courts in this District have been hesitant to rely on counterfactuals to determine the correct amount of costs under Rule 41(d). See, e.g. Jimenez, 2020 WL 3451821, at *3 (noting that whether something "'would have occurred anyway' . . . is not the relevant inquiry" and that courts should instead focus on whether the work in the prior case will be of use and

reduce costs in the present case). For all these reasons, the court concludes an award of $15,144.75 in attorneys' fees in Category Five is appropriate here.

In addition, Categories Six (responses to the Illinois court's inquiries) and Eight (local counsel) are also reimbursable. Judge Seeger entered several minute entries on the docket in the Illinois Action essentially requesting more information from the parties on various issues, including the jurisdictional issues litigated in that action. See, e.g., Minute Entry, ML Fashion, LLC et al. v. Nobelle et al., No. 1:20-CV-05124 (N.D. Ill. Jan. 19, 2021) (Doc. No. 56). Because the responses produced by defendants were specifically tailored to Judge Seeger's questions, that work is of little use in this action. The same is true of the work done by local counsel in the Illinois Action, who generally "only handled ministerial procedural tasks that ensured compliance with local requirements." Defs.' Reply at 6. Accordingly, the court awards $19,883.70 in Category Six and $8,792.50 in Category Eight. This brings the total amount awarded in Categories Five, Six, and Eight to $43,820.95.

2.      Category One

Most of the costs in Category One are also reimbursable. In particular, $6,512.67 of the $6,890.80 in costs requested for research and filing is recoverable under Rule 41(d). This excludes the $378.13 in such costs that appear to be related to the sanctions motion, for the reasons discussed infra at Section IV.B.3. See Pls.' Mem. at 20. Plaintiffs' arguments to the contrary miss the mark – the court need not be able "to differentiate between research costs and other costs incurred in connection with jurisdiction and venue, and costs incurred in connection with work that is not recoverable under Rule 41(d)" in order to conclude that an award of these costs is appropriate here. Id. It is certainly true that, prior to plaintiffs' voluntary dismissal of the

case, defendants litigated the Illinois Action in good faith, vigorously defending themselves against plaintiffs' claims.  The administrative costs, so to speak, of mounting that defense are sunk costs that cannot be reused and have no utility in the instant action.  This remains true even if those administrative costs were spent to support work that remains useful in the case before this court, such as some of the motion to dismiss briefing on failure to state a claim.  See, e.g., Zucker v. Katz, No. 87 Civ. 7595, 1990 WL 20171, at *2-3 (S.D.N.Y. Feb. 21, 1990) (awarding "administrative costs" such as "disbursements for reporting services, Law Journal search, duplicating costs, telephone tolls, telecopy, postage, external messengers, express delivery, and public transportation" because such expenditures were "reasonable" in the prior action and "[could] not be used in the defense of the second action").  Accordingly, the court awards $6,512.67 in research and filing costs as part of Category One.

The court also awards $5,351.06 for attorneys' fees in Category One.  Although the nature of the claims brought by plaintiffs has certainly shifted since the initial case work-up phase, entries related to calls with clients, review of plaintiffs' demand letter, and "initial legal research into the core of plaintiff[s'] claims surely still has some relevance."  MSP Recovery Claims, 2021 WL 5563982, at *8.  The court, in its discretion, finds that a 25% flat reduction from the attorneys' fees requested in Category One (in addition to the flat 10% deduction being applied to all Fox fees for excessive partner hours) is warranted here.  It therefore awards $5,351.06 for attorneys' fees in Category One, for a total award of $11,863.73 in that category.

   3.   Category Seven

In contrast, the court finds that none of the attorneys' fees related to defendants' sanctions motion are recoverable here.  To be sure, none of that work is reusable in this

action (the court would hope).  However, it is well established that under Rule 41d(d) "[o]nly reasonable costs are recoverable."  <u>Loubier</u>, 178 F.R.D. at 22.  Part of "determining a fair fee requires a conscientious and detailed inquiry into the representations that [the hours in question] were usefully and reasonably expended." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994).  Because a gratuitous sanctions motion, as set forth below, is neither useful nor reasonable, the court declines to award any costs to defendants for bringing it.

In its previous Ruling, this court observed that "the conduct by <u>all</u> the parties [ ] in prior and ongoing litigation [between them] has been distasteful . . . . [T]he court [has] the distinct impression that parties are more intent on inflicting pain on each other than actually litigating their claims on the merits."  <u>ML Fashion, LLC</u>, 2022 WL 313965, at *10 (emphasis in original).  Defendants' sanctions motion in the Illinois is an example of this sort of conduct.  That motion was premised on what Judge Seeger admittedly characterized as plaintiffs' "flimsy" personal jurisdiction argument for bringing the original action in Illinois.  <u>See</u> Minute Entry, <u>ML Fashion, LLC et al. v. Nobelle et al.</u>, No. 1:20-CV-05124 (N.D. Ill. Dec. 20, 2021) (Doc. No. 84).  But parties bring "flimsy" arguments into federal court all the time.  Yet, as Judge Seeger correctly noted, absent any "basis for a finding" that they did so in "bad faith, other than speculation", simply bringing a "flimsy" argument falls far short of the "pretty high bar . . . [for] sanctionable conduct."  <u>Id.</u>  Still, defendants brought their sanctions motion after the case had already

been voluntarily dismissed, and spent almost $40,000 doing so.  Because those costs were not "reasonably expended", they cannot be recovered here.[10]

        4.     Category Four

Next, the court concludes that $27,375.57 in attorneys' fees are reimbursable from Category Four (Motion to Stay briefing).  In the Illinois Action, defendants had moved for a stay under the <u>Colorado River</u> abstention doctrine pending the resolution of the Delaware action.  <u>See</u> Defs.' Mot. to Stay This Action Pending Resolution of the Delaware Litigation, <u>ML Fashion, LLC et al. v. Nobelle et al.</u>, No. 1:20-CV-05124 (N.D. Ill. Jan. 4, 2021) (Doc. No. 46).  That Motion was fully joined, but not decided by the court, when plaintiffs voluntarily dismissed the action.

Here, plaintiffs argue that: (1) costs are unwarranted because the Motion to Stay, like the Motion for Sanctions, was "gratuitous" and "unnecessary", and (2) to the extent that costs for that Motion are appropriate, they should be significantly reduced because the 81.7 hours spent on the memoranda connected to it were excessive.  Pls.' Mem. at 18-19, 21-28.  However, unlike the sanctions motion, defendants' Motion to Stay was reasonably filed.  Such motions are not an uncommon part of litigation when a second, related action is pending in another court.  Moreover, it is not the role of a court "to second guess defense counsel's litigation strategy" when deciding the appropriate

---

[10] Defendants cite this court's Ruling in <u>MSP Recovery</u> for the proposition that attorneys' fees related to a sanctions motion are recoverable under Rule 41(d).  <u>See</u> Defs.' Mem. at 8.  In that case, this court awarded defendants $5,736.06 under Rule 41(d) for preparing a Rule 11 sanctions letter.  <u>MSP Recovery Claims</u>, 2021 WL 5563982, at *6-7.  In that case, however, the preparation of the sanctions letter was wholly reasonable given the previous litigation between the parties.  Indeed, the case before this court was the <u>fifth</u> such action plaintiff had filed against three of the defendants, and the court had determined that those defendants were entitled to Rule 41(d) costs for each of the four prior actions that had been voluntarily dismissed.  <u>Id.</u> at *1-2.  In light of plaintiff's litigation history, the court concluded that reimbursing defendants for the cost of a single sanctions letter was warranted.  Here, however, defendants seek reimbursement for nearly $40,000 in attorneys' fees for a fully joined sanctions motion they had little business filing in the first place.

amount of costs under Rule 41(d), provided that strategy "was not unreasonable." Moskowitz v. Am. Savings Bank, F.S.B., No. 17-00299, 2017 WL 4883424, at *8 (D. Haw. Oct. 30, 2017).  Here, defendants' attempt to stay the Illinois Action while their lawsuit in Delaware was proceeding was certainly not unreasonable.  And, because the Colorado River analysis set forth in that Motion is not reusable in this court, an award of costs is appropriate.

Still, the court agrees that the 81.7 hours spent on such a straightforward Motion were excessive.  See Defs.' Mem. of Law in Supp. of Their Mot. to Stay, ML Fashion, LLC et al. v. Nobelle et al., No. 1:20-CV-05124 (N.D. Ill. Jan. 4, 2021) (Doc. No. 47); Defs.' Reply Mem. in Further Supp. of Their Mot. to Stay, ML Fashion, LLC et al. v. Nobelle et al., No. 1:20-CV-05124 (N.D. Ill. Feb. 24, 2021) (Doc. No. 69) (two memoranda totaling only 25 pages and analyzing the single Colorado River issue). Thus, the court in its discretion finds that an additional 40% reduction in attorneys' fees (on top of the flat 10% deduction to all Fox fees for excessive partner hours) is warranted here.  Accordingly, defendants are awarded $27,375.57 in Category Four. See, e.g. Kirsch, 148 F.3d at 173 ("the court has discretion simply to deduct a reasonable percentage of hours claimed").

5.      Categories Two and Three

Finally, in Categories Two (Motion to Dismiss on jurisdiction) and Three (Motion to Dismiss on failure to state a claim), defendants seek $115,634 and $143,542, respectively, for a total of $259,176 in those two categories.  These totals account for two rounds of Motion to Dismiss briefing, the first on the original Complaint, and the second on the Verified Amended Complaint.  In Category Two, plaintiffs do not seriously dispute that none of the jurisdictional work conducted in the Illinois Action is reusable

here; instead, they argue that the 187.9 hours spent on jurisdictional issues was excessive.  See Pls.' Mem. at 27.  The court agrees.

Throughout their Memoranda, defendants have consistently referenced how plaintiffs' initial lawsuit in Illinois was brought "contrary to [ ] clear Supreme Court authority precluding [their] assertion[ ] of personal jurisdiction."  Defs.' Mem. at 1. Indeed, plaintiffs' "needless[ ] ventur[e]" into Illinois was the entire basis of their sanctions motion in that action.  Id.  Yet somehow, they still spent almost 200 hours on the issue across two Motions to Dismiss.  Although the court does not doubt that counsels' extensive interviews with their clients and research into potential jurisdictional bases for the Illinois Action was "labor intensive work", as they argue in their Memorandum, the 187.9 hours spent on just the jurisdictional issues alone across three briefs is significantly more than courts in this district have held is reasonable for an entire Motion to Dismiss.  Id. at 11; see, e.g., MSP Recovery Claims, 2021 WL 5563982, at *5 (citing cases for the proposition that "courts have held that upwards of 100 hours litigating a Motion to Dismiss can be reasonable" when a case is particularly complex, but noting that the largest amount of hours on a single motion awarded in those cases was 141.31).

In contrast, here defendants have repeatedly emphasized that the jurisdictional issues in question were not complex at all; to the contrary, they were so clear-cut that plaintiffs' attempt to bring the suit in Illinois in the first place amounted to sanctionable conduct.  In light of those representations, it is difficult for the court to accept their about-turn in their Memoranda here, where they argue that such a straightforward issue required almost 200 hours of attorney time to brief.  Accordingly, the court reduces the

amount requested by 33%, on top of the 10% reduction for excessive partner hours. This results in an award of $69,727.30 in Category Two.

In Category Three, defendants seek $143,542 for 253.5 hours spent briefing the failure to state a claim portions of the Motions to Dismiss.  Here, although the court agrees that the complexity of this action makes it reasonable to have spent a greater number of hours than usual on the Rule 12(b)(6) aspects of the Motion, the 253.5 total is still higher than courts in this district have held is reasonable in complex litigation. See, e.g., id. (citing cases).  Moreover, although the claims asserted by plaintiffs have evolved, see supra at Section IV.B.1, Judge Seeger's observation that "the gist of the lawsuit is that Nobelle is a competing business (in violation of the non-compete) and is expropriating the property of ML Fashion" remains true.  Thus, even though defendants' research in the present action "had to be re-briefed to adopt to the different Circuit, while state law claims, briefed under Delaware and Illinois law in the Illinois [A]ction, now had to be briefed under Delaware and Connecticut law", "the extensive hours defendants' attorneys spent litigating the prior cases [were] not completely unusable here."  Defs.' Mem. at 4; MSP Recovery Claims, 2021 WL 5563982, at *8.  "In particular, counsel spent significant periods of time conducting research into claims that are fundamentally similar to the ones at hand here and familiarizing themselves with the context of the case."  MSP Recovery Claims, 2021 WL 5563982, at *8.  Against this backdrop, the court concludes that a 50% flat-rate reduction to the attorneys' fees in Category Three is warranted, in addition to the 10% reduction for excessive partner hours.  This results in an award of $64,593.90 in Category Three.

**V.     Conclusion**

For the reasons discussed above, plaintiffs are directed to pay defendants' costs for the Illinois Action in the amount of $217,381.45.  Because plaintiffs have represented that they will promptly pay these costs, the court orders them to do so within 30 days of the date of this Ruling.  See ML Fashion, LLC, 2022 WL 313965, at *10.  If plaintiffs fail to do so, defendants are granted leave to refile their Rule 41(d) Motion to Stay the proceedings until plaintiffs have complied.


**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of June 2022.


                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge